**Certiorari Denied, January 17, 2013, No. 33,936**
**Certiorari Denied, January 22, 2013, No. 33,953**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-028**

**Filing Date: November 8, 2012**

**Docket No. 31,061**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JORGE LUIS SOTELO,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**J. Richard Brown, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** Appellant's motion for rehearing is granted. The opinion filed in this case on October 24, 2012, is withdrawn and this Opinion is substituted in its place.

1

**{2}**     Defendant appeals his convictions for kidnapping, battery on a household member, and intimidation of a witness on grounds that (1) the district court erred in denying an instruction on the lesser-included offense of false imprisonment, (2) convictions for kidnapping and battery violate the prohibition against double jeopardy, (3) the conduct constituting kidnapping was incidental to the battery, and (4) his counsel was ineffective because he failed to object to improper character evidence at trial and to seek mitigation of Defendant's sentence.  Defendant also argues that the district court did not consider mitigating evidence and, therefore, the case should be remanded for resentencing.

**{3}**     We conclude that there is no reasonable view of the evidence such that false imprisonment was the greatest offense committed and, thus, the district court did not err in refusing the request for a lesser-included offense instruction.  We determine also that the conduct underlying the kidnapping and battery charges was neither factually unitary nor unitary as a matter of law.  Therefore, there was no violation of the prohibition against double jeopardy.  Furthermore, the restraint and/or movement involved in this case was not incidental to the battery, and Defendant failed to establish a prima facie case of ineffective assistance based on failure to object to improper character evidence because, even if there were error, there is no evidence that Defendant was prejudiced by the error.  We affirm Defendant's convictions.  We remand for resentencing after consideration of mitigating circumstances.

**BACKGROUND**

**{4}**     Defendant and Victim lived together at the time of the incident giving rise to the charges in this case.  They have one child.  Victim has two other children, one of whom was fifteen years old on July 13, 2009, the date of the incident.  Victim testified that Victim and Defendant were at Victim's parents' house on July 12 but left together late in the evening in Victim's car, with Victim driving because Defendant did not have a driver's license.  They stopped to get gas, and Defendant got into the vehicle in the driver's seat.  Defendant said he would drive the rest of the way to their home half a mile away.  Instead, Defendant drove in the opposite direction.  Victim asked where they were going, and Defendant responded that he was taking a drive.  Defendant continued driving down the Hobbs Highway away from town and, after turning off the highway, drove ten to fifteen minutes to a deserted area. On the way, he told Victim that he wanted to take her to a place with "no cops [and] no phones."  Defendant pulled Victim out of the vehicle and started pulling her hair, kicking her, and throwing her into bushes.  Victim testified that during this time, Defendant told her he was going to kill her or leave her there to die, and repeatedly stated that he "did not want to go back to jail."  She stated that when she refused to swear that she would not call the police, he continued beating her.  Defendant held Victim's arm while driving to another location on Derrick Road, where he beat her some more.  When Victim attempted to run away, Defendant chased her, put her back in the car, and drove to a third location on Hidalgo Road. Victim testified that Defendant beat her again and forced her to have intercourse with him.  After driving around for an hour or two, Defendant drove to their home in the early morning of July 13.  Victim's daughter opened the door and told Victim to call the police.

2

Defendant went to the bedroom. Victim then went to the sheriff's department to report the incident.

**{5}** At trial, Defendant moved for a jury instruction on false imprisonment on the ground that false imprisonment was a lesser-included charge of kidnapping. The judge denied this motion. Defendant was convicted of kidnapping, battery on a household member, and intimidation of a witness. He was acquitted of criminal sexual penetration. At the sentencing hearing, Defendant requested a continuation to prepare a motion for mitigation of the kidnapping sentence, which was granted. A second hearing on November 8, 2010, was also continued. Defendant was sentenced on November 29, 2010. A motion for mitigation was not filed.

**{6}** Defendant was sentenced to a total of twenty-one years: eighteen years for kidnapping, three years for intimidation of a witness, and 364 days for battery against a household member. The sentences for the latter charges were ordered to run concurrent to each other and consecutive to the kidnapping sentence.

## DISCUSSION

**{7}** We address Defendant's arguments in the order presented.

**A. Defendant Was Not Entitled to a Jury Instruction on a Lesser-Included Offense**

**{8}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. On appeal, the evidence is viewed "in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

**{9}** There are two prerequisites for a lesser-included offense instruction. First, the district court should "grant the request when the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime." *State v. Meadors*, 121 N.M. 38, 44, 908 P.2d 731, 737 (1995). Second,

> the trial court should grant . . . an instruction [on a lesser-included charge] if (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense . . . ; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* Although the *Meadors* test applied to a prosecution request for an instruction on a lesser-included charge and focused on protection of the defendant's due process rights, this Court

applied it to a defendant's request for such an instruction in *Darkis*. *See State v. Darkis*, 2000-NMCA-085, ¶ 14, 129 N.M. 547, 10 P.3d 871. When it is the defendant requesting a lesser-included offense instruction, "the appropriate focus is . . . on the facts the [s]tate had arrayed and the theory of its case." *Id.* ¶ 15. This analysis entitles a defendant to a lesser-included offense instruction when the evidence supports the lesser-included offense. *Id.* ¶ 17.

**{10}** In reviewing on appeal whether a reasonable jury could find that the lesser-included offense is the highest offense committed, "[w]e will not 'fragment the testimony . . . to such a degree as to distort it' in order to construct a view of the evidence which would support the giving of the instruction." *State v. Gaitan*, 2002-NMSC-007, ¶ 24, 131 N.M. 758, 42 P.3d 1207 (second alteration in original) (citation omitted). In *State v. Wilson*, the Court held that a lesser-included offense instruction was properly denied where the defendant sought to show that the jury could have believed portions of testimony by both the victim and defendant and rejected other portions. 117 N.M. 11, 15, 868 P.2d 656, 660 (Ct. App. 1993). It held that "there must be some evidence other than that obtained by taking portions of the victim's and portions of the defendant's testimony to support the lesser-included offense instruction. . . . When there is other evidence [to support the lesser-included offense instruction], then the risk of impermissible distortion [of the testimony] is eliminated." *Id.*

**{11}** Defendant argues that "[t]he jury was free to reject [Victim's] . . . testimony that [Defendant] expressed a kidnapping intent . . . , especially in light of the significant impeachment of her credibility which resulted in acquittal for the [criminal sexual penetration] charge" and, therefore, there was "some view of the evidence that [false imprisonment] was the most serious offense committed." The State responds, in essence, that no reasonable juror could find that false imprisonment was the highest offense committed because to do so would "requir[e] an impermissible fragmentation of the evidence, picking and choosing among elements of a single witness's testimony."

**{12}** It is clear that the first *Meadors* prerequisite is met because false imprisonment is a subset of kidnapping. False imprisonment is "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." NMSA 1978, § 30-4-3 (1963). Kidnapping requires "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury[,] or a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (2003). The difference between these two statutes is found in kidnapping's intent requirements. *See State v. Clark*, 80 N.M. 340, 343, 455 P.2d 844, 847 (1969) ("Merely to confine or restrain against a person's will without the requisite intention is not kidnapping. This is false imprisonment . . . when done with knowledge of an absence of authority." (citations omitted)).

**{13}** The second *Meadors* prerequisite has three components. Two are satisfied readily: Defendant could not have committed kidnapping without committing false imprisonment since false imprisonment is a subset of kidnapping, and there is sufficient

4

evidence to support a conviction for false imprisonment found in Victim's testimony that Defendant restrained her in the vehicle. It is the last component—whether "a jury rationally could acquit on the greater offense and convict on the lesser"—that is contested by the parties and on which the bulk of our analysis rests. 121 N.M. at 44, 908 P.2d at 737.

**{14}** This part of the *Meadors* test requires that (1) "the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that [(2)] a jury rationally could acquit on the greater offense and convict on the lesser." *Id.* Defendant argues that the jury could have found that he did not intend to cause Victim harm. He points to Victim's testimony that Defendant "did not become angry or violent until *after* they had arrived in a secluded location" as an indication that Defendant "lacked the intent to injure [Victim] at the time he drove out there." He argues that the fact he intentionally battered Victim does not prove that he transported her to the deserted area with the intent to do so because "false imprisonment can involve a resulting injury without constituting kidnapping." The State counters that Victim's testimony that Defendant told her that he wanted to bring her to a place with "no cops [and] no phones" shows that "the only rational conclusion is that he took her there [to beat her]." These arguments focus on whether Defendant intended to batter Victim during the period starting at the gas station and ending when Defendant began beating Victim at the Hobbs Highway location. Essentially, the parties disagree as to when Defendant formed the intent to cause Victim physical injury. Victim's testimony, the only evidence presented on what happened during the drive, permits a legitimate dispute on this issue, thus satisfying the first component of this test.

**{15}** We are not limited to analysis of the dispute over this period, however, because this is not the only period relevant to the kidnapping charge. Even if the jury concluded that Defendant did not intend to harm Victim during the initial transport from the gas station to the Hobbs Highway location, there was restraint and movement to satisfy the requirements of kidnapping because, after beating Victim there, Defendant drove to two other locations where he continued to beat her. Victim testified as to the battery, and both the police officer to whom she reported the incident and her daughter testified as to the resultant bruising. The jury viewed photos of the bruising at trial. Based on this evidence, the jury convicted Defendant of battery against a household member. For the jury to believe that Defendant did not intend to batter Victim when he drove her from Hobbs Highway to Derrick Road and from there to Hidalgo Road would require substantial fragmentation of the evidence. In essence, such an interpretation would require the jury to believe that Defendant committed the battery but did not intend to do so while driving from place to place. This is not "a reasonable view of the evidence [that] could lead a fact[]finder to conclude that the lesser offense is the highest degree of crime committed." *State v. Neatherlin*, 2007-NMCA-035, ¶ 22, 141 N.M. 328, 154 P.3d 703. Thus, the second component of this test fails.

**{16}** Although we agree with Defendant that it is the *intent* to cause injury, not the injury itself, that distinguishes kidnapping from false imprisonment, evidence of injury may be used by the jury as circumstantial evidence of intent. *See State v. Allen*, 2000-NMSC-002, ¶ 65, 128 N.M. 482, 994 P.2d 728 ("[W]e [allow] a jury to 'infer, from evidence of acts committed

5

at some later point during the commission of a kidnapping, that the necessary criminal intent existed at the time the victim first was restrained.' " (citation omitted)). If the incident had ended with Defendant driving Victim home after beating her at the Hobbs Highway location, there may have been a reasonable interpretation of the evidence that the battery was a spontaneous act not preceded by kidnapping. But that is not what happened. Instead, the transportation of Victim from Hobbs Highway to Derrick Road was preceded by an intentional battery and followed by an intentional battery. So was the transport from Derrick Road to Hidalgo Road. Defendant presented no evidence that such transport either did not occur or that he had another purpose for driving from place to place. The only rational view of the evidence is that Defendant intended to injure Victim as they traveled between these locations. The district court did not err in denying Defendant's request for an instruction on the lesser-included offense of false imprisonment.

**B.      Defendant's Convictions Do Not Violate Double Jeopardy**

**{17}** "The constitutional prohibition against double jeopardy 'protects against both successive prosecutions and multiple punishments for the same offense.'" *State v. Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (citation omitted); *see* U.S. Const. amends. V, XIV; N.M. Const. art. II, § 15. Defendant argues that his convictions for kidnapping and battery violate this prohibition because his conduct was unitary both based on the facts and as a matter of law and the Legislature did not intend to punish battery and kidnapping separately. The State responds that (1) the issue was not preserved properly; and (2) the conduct is not unitary under the facts or as a matter of law and, therefore, double jeopardy does not apply. We agree that Defendant's double jeopardy rights were not violated.

**{18}** Defendant need not have preserved this issue in order to raise it on appeal. *See State v. Martinez*, 2007-NMCA-160, ¶ 5, 143 N.M. 96, 173 P.3d 18. "Double jeopardy presents a question of law, which we review de novo." *State v. Saiz*, 2008-NMSC-048, ¶ 22, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. "[T]he sole limitation on multiple punishments is legislative intent[.]" *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). Under New Mexico's double jeopardy jurisprudence, our inquiry into legislative intent proceeds in two stages. *Id.*; *State v. Frazier*, 2007-NMSC-032, ¶¶ 18-19, 142 N.M. 120, 164 P.3d 1. "The first part of our inquiry [is] whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes. The second part [is] whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. If the evidence is such "that the jury reasonably could have inferred independent factual bases for the charged offenses[,]" the conduct is not unitary. *Saiz*, 2008-NMSC-048, ¶ 30 (internal quotation marks and citation omitted). Independent factual bases "may be established by determining whether the acts constituting the two offenses are sufficiently separated by time or space, looking to the quality and nature of the acts, the objects and results involved, and the defendant's *mens rea* and goals during each act." *Id.*

6

**{19}** In certain situations, two offenses are "unitary by definition." *Frazier*, 2007-NMSC-032, ¶ 23. In those cases, where the Legislature has "define[d] the offenses as greater and lesser included, and the jury instructions require the jury to make the factual finding of unitary conduct," the court need not assess whether the conduct was unitary. *Id.* ¶ 20. An example is the felony murder statute, which requires that the killing be committed "in the commission of or attempt to commit any felony[.]" NMSA 1978, § 30-2-1(A)(2) (1994). The construction of this statute requires a factual finding that one crime was committed in conjunction with another. *Frazier*, 2007-NMSC-032, ¶ 23. "Thus, when a jury finds a defendant guilty of felony murder, it has already determined the fact-based unitary conduct question—it has found that the killing happened *during* the commission of the underlying felony." *Id.* Taken together with *State v. Contreras*, 120 N.M. 486, 903 P.2d 228 (1995), in which the Court held that "when the conduct is unitary, the defendant cannot be convicted of both felony murder and the underlying predicate felony[,]" *Frazier*'s holding means that a defendant can never be convicted of both felony murder and the predicate felony because the conduct is always unitary. 2007-NMSC-032, ¶¶ 16, 23.

**1.      Defendant's Conduct Was Not Factually Unitary**

**{20}** With this background in mind, we turn back to the facts of this case. We address first whether Defendant's conduct was factually unitary, then whether it was unitary as a matter of law. Defendant argues that his conduct was factually unitary because "[t]he physical contact was constant" and "[Defendant's] mental state of anger was also constant[.]" We are unpersuaded. Here, Victim testified that at different times during the encounter, Defendant kicked her, punched her, pulled her hair, and pushed her into bushes. She testified that he transported her from place to place while holding her by the shirt and arm and that when she tried to run, he dragged her back to the car. To convict for kidnapping, the jury was instructed they must find that Defendant "took, restrained, confined, or transported [Victim] by force or intimidation . . . to inflict physical injury on her[.]" They were instructed that in order to convict for battery, they must find that Defendant "intentionally touched or applied force to [Victim] *by hitting or kicking her*[.]" (Emphasis added.) Thus, based on these instructions and Victim's testimony, the jury could have found independent factual bases for kidnapping and battery because the instructions limited the conduct constituting battery to hitting or kicking Victim, thereby precluding inclusion of the conduct by which Defendant restrained or transported Victim in the car from place to place. *See State v. Pisio*, 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct. App. 1994) ("The key to the restraint element in kidnapping is the point at which [the v]ictim's physical association with [the d]efendant was no longer voluntary."). The conduct was not factually unitary. *State v. Urioste*, 2011-NMCA-121, ¶ 28, 267 P.3d 820 ("[Where] the jury could reasonably have inferred an independent factual basis for . . . [d]efendant's convictions, . . . we do not second-guess the factual conclusions of a jury."), *cert. quashed*, 2012-NMCERT-008, __ P.3d __ (No. 33,287, Aug. 17, 2012).

**2.      Defendant's Conduct Was Not Unitary as a Matter of Law**

7

**{21}** Neither is the conduct unitary as a matter of law. Defendant argues that the kidnapping statute functions like the felony murder statute in *Frazier*. *See* Section 30-4-1(B); *Frazier*, 2007-NMSC-032, ¶ 23. Section 30-4-1(B) allows punishment of kidnapping as a second degree felony if the defendant "voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim." Therefore, Defendant argues, the elevation of a kidnapping charge to first degree based on physical injury is analogous to elevation of a killing to first degree murder based on a predicate felony. The State maintains that the kidnapping statute is not similar to the felony murder statute because, unlike that statute, it does not include a requirement of a predicate crime that is subsumed into kidnapping. We are not persuaded by Defendant's analogy to the felony murder statute because the statutes at issue are neither facially nor functionally the same.

**{22}** *Frazier*'s analysis of the felony murder statute relies on the legislative intent behind the statute. 2007-NMSC-032, ¶ 26; *see* § 30-2-1(A)(2). Although that analysis "turn[ed] entirely on the unitary conduct prong of *Swafford*[,]" the Court stated that, in essence, both *Swafford* prongs depend on whether the Legislature intended multiple punishments. *Frazier*, 2007-NMSC-032, ¶¶ 17-18. The factual inquiry into "independent factual bases" is based on an "assum[ption] that the [L]egislature intended to authorize separate punishments" when "criminal acts are sufficiently separate in time and space[.]" *Id.* ¶ 19. Thus, the unitary conduct analysis is "a proxy for legislative intent when the [L]egislature is silent." *Id.* The Court went on to determine that the Legislature was not silent in the felony murder statute: its intent to treat certain crimes as unitary is evinced by the "expres[s] require[ment] that the killing happen 'in the commission of' the underlying felony." *Id.* ¶ 23.

**{23}** Here, there is no such legislative intent indicated in the kidnapping statute. Unlike the felony murder statute, the kidnapping statute does not include as an element "in the commission of [a] felony." *Compare* § 30-2-1(A)(2), *with* § 30-4-1. Thus, on its face, the kidnapping statute is not like the felony murder statute. In addition, there is no evidence that the Legislature has ever intended to make the kidnapping statute like the felony murder statute. "We presume that the [L]egislature knows the law when enacting a statute." *State v. Bennett,* 2003-NMCA-147, ¶ 11, 134 N.M. 705, 82 P.3d 72. Yet, although the felony murder statute has been part of New Mexico's schema for homicide since well before 1963, *see* NMSA 1953, § 40-24-4 (Vol. 6, 1965) (defining first degree murder), the Legislature has not added a similar provision to the kidnapping statute even though it has amended that statute three times since 1963. *See* § 30-4-1. Finally, New Mexico has declined to follow the Model Penal Code's kidnapping statute, adopted in 1962 and followed by some other states, which includes a provision such that kidnapping may be charged for restraint intended to facilitate another crime. *See* § 30-4-1; Model Penal Code § 212.1 (1962); *see, e.g.*, Kan. Stat. Ann. § 21-5408(a)(2) (2010).

**{24}** Defendant argues that, in spite of the difference in wording, the kidnapping statute functions like the felony murder statute. We disagree for two reasons. First, the kidnapping statute does not require that the jury find there was a crime that caused physical injury. In the felony murder context, the uniform jury instructions require the jury to find that the

defendant committed a felony and that the murder was committed during the commission of that felony. *See* UJI 14-202 NMRA. "There can be no conviction for killing in the course of a felony without proof of all of the elements of the [underlying] felony." *State v. DeGraff*, 2006-NMSC-011, ¶ 26, 139 N.M. 211, 131 P.3d 61.

**{25}** To convict for first degree kidnapping, the jury must find that the defendant inflicted physical injury on or committed a sexual offense against the victim, or that the victim was not voluntarily released in a safe place. *See* § 30-4-1(B); UJI 14-6018 NMRA. If a sexual offense is alleged, the jury must find that the elements of that crime are satisfied. *See* UJI 14-6018 Use Note 5 (stating that the jury must be instructed in the elements of the sexual offense). This part of the statute is similar to the felony murder statute. *See* UJI 14-202 Use Note 3. The jury may convict for first degree kidnapping, however, if there is evidence of physical injury even if there is no charge for a crime associated with that injury. *See* UJI 14-6018 Use Note 4 (in which there is no requirement that the jury be instructed in the elements of a crime causing physical injury). In other words, the jury may find that the defendant inflicted physical injury on the victim without considering the elements of a specific crime against the person. The absence of a requirement for the jury to find that another crime was committed indicates that the Legislature intended to punish as first degree kidnapping conduct that meets the basic elements of second degree kidnapping and results in physical injury, even if the defendant is not charged with a crime for the conduct causing the injury. *Contra Frazier*, 2007-NMSC-032, ¶ 24 ("[T]he conduct required to commit felony murder will always support a parallel charge with respect to the underlying felony."). In this case, the jury could have determined that Victim suffered physical injury when Defendant dragged her to the car, threw her into the bushes, pulled her hair, or otherwise restrained her—all actions distinct from the hitting and kicking on which the battery charge was based.

**{26}** Second, *Frazier* is inapposite because the problem in that case does not exist here. Critical to *Frazier*'s analysis is the fact that the underlying felony increases punishment for a killing to the same level as an intentional killing even when there is no "premeditation or a depraved mind." *Id.* ¶ 26. In the felony murder context, "the killer's mental state is consistent with second[]degree murder." *Id.* ¶ 9. Thus, if punished for both felony murder and the underlying felony, the "defendant will receive a *greater* punishment than a defendant who is shown to have killed with a more culpable mental state such as deliberate intent murder." *Id.* ¶ 10. The key to this analysis is the recognition that different mental states determine the level of culpability for murder. *See* § 30-2-1; *State v. Ortega*, 112 N.M. 554, 564, 817 P.2d 1196, 1206 (1991), *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. For example, first degree murder requires the intent to kill or "indifference for the value of human life." *State v. Ibn Omar-Muhammad*, 102 N.M. 274, 278, 694 P.2d 922, 926 (1985); *see* § 30-2-1(A). Second degree murder, however, requires only the knowledge that the defendant's conduct "create[s] a strong probability of death or great bodily harm." Section 30-2-1(B). It is axiomatic that we punish intentional conduct more severely than unintentional conduct. *See* 1 Wharton's Criminal Law § 27 (15th ed. 2012); *Ortega*, 112 N.M. at 562, 817 P.2d at 1204. In the felony murder context, when a defendant is sentenced for both felony murder and the

9

underlying felony, he is punished more severely than one who acted with intent to kill, a result contrary to the schema of the murder statute. *See Frazier*, 2007-NMSC-032, ¶ 10. In contrast, in the kidnapping context, the mental state for first and second degree kidnapping is the same: in this case, the intent to inflict physical injury. The mental state that makes a perpetrator culpable for kidnapping is constant whether there is a physical injury or not. Punishment for both kidnapping and the conduct that caused physical injury, therefore, does not create the same arbitrary result as discussed in *Frazier* because the defendant is not punished more severely than someone with a "more culpable mental state." *Id.*

**{27}**　We conclude that the kidnapping statute is not analogous to the felony murder statute and the battery and kidnapping in this case were not unitary as a matter of law. Since we determine that Defendant's conduct was neither factually unitary nor unitary as a matter of law, there is no reason to proceed to the second prong of the *Swafford* analysis. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234 ("If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, inquiry is at an end."). Defendant's convictions for first degree kidnapping and battery against a household member do not violate the constitutional prohibitions against double jeopardy.

## C.　Kidnapping Was Not Incidental to Battery

**{28}**　Defendant next argues that the Legislature did not intend to punish restraint that is incidental to another crime as kidnapping and cites to other jurisdictions that have interpreted kidnapping statutes to apply only when the restraint or movement has significance independent from the underlying crime. *See, e.g.*, *State v. Salamon*, 949 A.2d 1092, 1121 (Conn. 2008); *State v. Buggs*, 547 P.2d 720, 723 (Kan. 1976); *People v. Daniels*, 459 P.2d 225, 238 (Cal. 1969) (in bank). He argues further that since "[t]he restraint involved here was done for the sole purpose of effectuating [Defendant's] contact with [Victim] . . . and did not involve more restraint than was necessary to commit the battery as alleged," the kidnapping conviction should be vacated. The State argues that Defendant failed to preserve these issues and that, even if they were preserved, "driving a person across miles of desert is [not] necessary to commit battery . . . , given the number of people who have succeeded in committing battery without driving at all." (internal quotation marks omitted).

**{29}**　Defendant's first contention was resolved in *State v. Trujillo*, 2012-NMCA-___, ¶ 39, ___ P.3d ___ (No. 30,563, Aug. 27, 2012). In that case, the defendant was convicted of kidnapping for holding the victim during a fight in which he and an accomplice beat the victim with a bar. *Id*. ¶¶ 2-3. This Court examined the history and purpose of the kidnapping statute and concluded that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." *Id*. ¶ 39. We examined three tests used by other states to determine whether restraint or movement is incidental to another crime. *Id.* ¶¶ 32-38. Although we did not adopt a specific test, we vacated the kidnapping conviction, stating that the restraint was incidental under any of the tests because

10

it was "not longer or greater than that necessary to achieve a battery[,] . . . did not subject [the v]ictim to substantially greater risk of harm[,]" and did not facilitate another crime. *Id.* ¶ 39. We stated that it was possible to make this determination on the facts of that case because "[t]he facts [did] not present a 'close call.' " *Id.* But "[a] more complicated factual scenario would present a jury question—submitted under appropriate instructions—as to whether the restraint involved was merely incidental to the other crime." *Id.* ¶ 42. This part of our analysis in *Trujillo* rested on an assessment of the sufficiency of the evidence to support kidnapping. *See State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 ("In reviewing the evidence, the relevant question is whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt.") (internal quotation marks and citation omitted); *State v. Ward*, 51 A.3d 970, 984 (Conn. 2012) (examining whether the "jury reasonably could have concluded that the evidence adduced at trial established that the defendant was guilty of kidnapping" where the defendant argued that any movement of the victim was incidental to sexual assault under the test expressed in *Salamon*, 949 A.2d at 1121).

**{30}** We apply this analysis to Defendant's second contention: that any restraint of Victim was incidental to battery. Defendant need not have preserved this argument because it rests on whether the evidence was sufficient to convict him of kidnapping. *State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295 ("[T]he question of sufficiency of the evidence to support a conviction may be raised for the first time on appeal."). Under this standard, "an appellate court reviews the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Riley*, 2010-NMSC-005, ¶ 12 (alteration, internal quotation marks, and citation omitted). In essence, Defendant argues that there was insufficient evidence that Defendant's restraint of Victim was not "merely in furtherance of the ongoing battery and [that it had] a significance of its own." We are unpersuaded. Kidnapping may occur once the "[v]ictim's physical association with [the d]efendant [is] no longer voluntary." *Pisio*, 119 N.M. at 260, 889 P.2d at 868. As discussed above, the jury was instructed that a battery conviction required finding that Defendant hit or kicked Victim. In addition, they heard evidence that Defendant drove Victim from one location to another while restraining her in the car. There was sufficient evidence for the jury to conclude that this conduct was not merely incidental to hitting or kicking her. *See Trujillo*, 2012-NMCA-___, ¶¶ 37-38.

**D.** **Appellant Has Not Established a Prima Facie Case of Ineffective Assistance Based on Defense Counsel's Failure to Object**

**{31}** Defendant maintains that his counsel was ineffective because he did not object to character evidence presented at trial and because he failed to file a motion or argue for mitigation at the sentencing hearing. Claims of ineffective assistance of counsel are reviewed de novo. *State v. Quiñones*, 2011-NMCA-018, ¶ 28, 149 N.M. 294, 248 P.3d 336, *cert. denied,* 2011-NMCERT-001, 150 N.M. 559, 263 P.3d 901. The two prongs of the test for ineffective assistance claims were stated concisely in *State v. Hernandez*:

11

To prevail on his claim of ineffective assistance of counsel, . . . [the d]efendant bears the burden of showing both that his attorney's performance fell below that of a reasonably competent attorney, and that, as a result of his attorney's incompetence, he suffered prejudice. Absent a showing of both incompetence and prejudice, counsel is presumed competent.

115 N.M. 6, 16, 846 P.2d 312, 322 (1993) (citation omitted); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). The range of conduct that is reasonable is broad; "[i]f we can conceive of a reasonable trial tactic which would explain the counsel's performance, we should not find ineffective assistance." *Quiñones*, 2011-NMCA-018, ¶ 29 (alteration, internal quotation marks, and citation omitted). Prejudice is present when there is a "reasonable probability that 'but for' counsel's unprofessional error, the result of the proceeding would have been different." *Hernandez*, 115 N.M. at 17, 846 P.2d at 323 (internal quotation marks and citation omitted). A showing of prejudice presents a high barrier because "[c]ounsel's deficient performance must represent so serious a failure of the adversarial process that it undermines judicial confidence in the accuracy and reliability of the outcome." *Quiñones*, 2011-NMCA-018, ¶ 30 (internal quotation marks and citation omitted).

**{32}** Defendant argues that defense counsel was ineffective because he failed to object to testimony referring to prior bad acts which was "clearly intended to prove conformity therewith" in violation of Rule 11-404(B)(1) NMRA ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Specifically, he argues that references in the testimony to his impending court date, prior jail time, and previous altercations were objectionable. During the trial, Victim stated three times that Defendant had a court date the day following the incident. In the course of her testimony, she stated six times that Defendant had said that he did not want to go "back to jail." At one point, Victim made reference to an incident that allegedly occurred several days earlier. Finally, Victim's daughter testified that she advised her mother to call the police because "why would you want to deal with stuff like this, like someone hitting you *all the time*?" (Emphasis added). She also stated that she had "seen bruises on [Victim]" in the past. Both the State and defense counsel made reference to Defendant's court date during closing arguments. Defense counsel also mentioned in closing arguments Defendant's alleged statement that he did not want to go back to jail. Defense counsel did not object to any of these statements, nor did he file any motions in limine to exclude this evidence or request a curative instruction for the jury.

**{33}** We agree with the State that even if defense counsel's failure to object was unreasonable, Defendant has not demonstrated that the outcome of the trial would have been different but for this failure. *See Hernandez*, 115 N.M. at 16-17, 846 P.2d at 322-23 ("On review, we need not consider the two prongs of the test in any particular order."). "Although the statement[s] may have had some prejudicial effect, Defendant has not demonstrated that had th[ese] statement[s] not come in, the result of the proceeding would have been different."

*State v. Trujillo*, 2002-NMSC-005, ¶ 45, 131 N.M. 709, 42 P.3d 814. In *State v. Roybal*, the Court considered whether defense counsel was ineffective when he failed to redact portions of a witness' statement implicating the defendant in a prior murder. 2002-NMSC-027, ¶ 14, 132 N.M. 657, 54 P.3d 61. After finding that "[t]here is little question . . . that [defense] counsel's" conduct was unreasonable, *id.* ¶ 22, the Court stated that the defendant was prejudiced because "evidence that he had committed a prior murder invites the impermissible inference that, because he had killed in the past, it is more likely that he committed this murder." *Id.* ¶ 26. "Under the *Strickland* measure of ineffective assistance of counsel, [however,] mere evidentiary prejudice is not enough." *Roybal*, 2002-NMSC-027, ¶ 25. The Court considered the prejudicial effect "against the totality and strength of the evidence of . . . guilt [to] determine if the outcome of the trial has been rendered unreliable." *Id.* ¶ 26. The Court determined that, compared to the evidence against the defendant in that case, the statement "do[es] not make the reliability of the trial suspect and do[es] not deprive [the d]efendant of his due process right to a fair trial." *Id.* ¶ 28.

**{34}** Similarly, here the State presented testimony by Victim, the officer to whom Victim reported the incident, and Victim's daughter. The State also presented photographs of Victim's injuries. Defense counsel's strategy was to attack Victim's credibility; he did not call any witnesses nor did he present other evidence. "The cumulative effect of these . . . items of evidence, even considering Defendant's efforts to discredit them, are simply too strong for us to conclude" that the trial would have been "any different absent [defense] counsel's error." *Id.* ¶ 29. Defendant has failed to establish a prima facie case of ineffective assistance based on failure to object.

**E.      The District Court Failed to Consider Mitigating Circumstances in Sentencing**

**{35}** In his second claim of ineffective assistance, Defendant argues that defense counsel failed to argue for mitigating circumstances because he misunderstood the difference between the judge's power to defer or suspend under NMSA 1978, Section 31-20-3 (1985), and the judge's power to reduce the sentence by one-third under NMSA 1978, Section 31-18-15.1 (2009). Defendant also argued, albeit glancingly, that the district court failed to consider mitigating circumstances. Both the judge and defense counsel made statements in the sentencing hearings about the judge's lack of discretion in the kidnapping sentence.

**{36}** In order to make a fully informed decision on whether the district court erred by not considering mitigating circumstances, we requested supplemental briefing. *See State v. Clemonts*, 2006-NMCA-031, ¶ 10, 139 N.M. 147, 130 P.3d 208; *see State v. Nozie*, 2009-NMSC-018, ¶ 15, 146 N.M. 142, 207 P.3d 1119 (stating that "an appellate court may decline to address [a claim not fully briefed by the parties], [but] it is not required to do so if the transcripts and briefs are sufficient to present the essential question for review on the merits," and that "NMRA 12-213 does not require th[e] Court to disregard an issue when an appellant fails to comply with its provisions") (alterations, internal quotation marks, and citations omitted)). The supplemental briefs addressed the interplay, if any, between Sections 31-18-15.1 and 31-20-3, whether the district court considered mitigating

13

circumstances, and the holding of *State v. Juan*, 2010-NMSC-041, 148 N.M. 747, 242 P.3d 314, as it relates to this case.

**{37}** "We review the trial court's sentencing for an abuse of discretion." *State v. Jensen*, 1998-NMCA-034, ¶ 19, 124 N.M. 726, 955 P.2d 195. A trial court abuses its discretion when it exercises its discretion based on a misunderstanding of the law. *See State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. We remand for resentencing because the district court did not consider mitigating circumstances in sentencing. Because our holding renders it unnecessary, we do not address Defendant's arguments regarding ineffective assistance of counsel based on a failure to move for mitigation.

**{38}** At the first sentencing hearing, defense counsel argued that the judge had discretion to suspend a portion of the eighteen-year sentence. He also argued that, although "some time is not inappropriate," eighteen years is "extravagant." At that point, the judge asked for the reference to the governing statute and was referred to Section 31-18-15 by defense counsel. This is the statute governing basic sentences, not suspension or deferral of sentences nor mitigation of sentences. The State interjected that the judge "ha[d] to read that section in conjunction with [Section] 31-20-3," which is the statute governing suspensions and deferrals. The judge agreed with the State that under Section 31-20-3, he did not have the authority to suspend or defer sentences for first degree felonies. Later in the hearing, defense counsel requested that the hearing be continued to allow him to prepare a motion for mitigating circumstances. The judge continued the hearing and gave Defendant ten days to file a motion.

**{39}** Defense counsel did not file the motion and stated at the next hearing on the matter, "after an extensive review[,] I would have to . . . agree with the court and [the prosecutor] that this is not one, the two lesser offenses would be *available for mitigation*, but not the first degree kidnapping." (Emphasis added.) The judge responded, "what I recall reacting to was whether or not I had any discretion in suspending any portion of that eighteen-year sentence, which I don't. But mitigation, I didn't even really look at the mitigation statutes, haven't seen a formal request for mitigation." He proceeded to hear argument from counsel on sentencing. Defense counsel stated that "as to count one, I think we are basically dealing with something that the court doesn't have a lot of discretion with . . . in a situation like this, you're looking at basically having to hand down an eighteen-year sentence." He also stated that "like I said, there's not much we can do with [the kidnapping sentence], there's not much argument I can make to that." After hearing from Defendant, the judge said, "I don't have any discretion in count one, it's an eighteen-year mandatory sentence, I don't have any discretion in that count at all."

**{40}** This understanding of the scope of his authority is partially correct. The judge determined correctly that Section 31-20-3 does not apply to first degree felonies. *See* § 31-20-3 (stating that a court may defer or suspend a sentence only for crimes "not constituting a capital or first degree felony"). This statute does not have any effect, however, on the

14

judge's ability to alter a sentence based on mitigating circumstances. *See State v. Cook*, 2006-NMCA-110, ¶ 21, 140 N.M. 356, 142 P.3d 944. Under Section 31-18-15.1(G), the court may reduce the sentence by up to one-third. Had the court found mitigating circumstances here, the sentence could have been reduced by up to six years.

**{41}** The State argues that the district court has no obligation to consider mitigating evidence "sua sponte, in the absence of a request from the defense" and that, therefore, this issue is not relevant to this appeal. We disagree. The plain language of the statute imposes a duty on the court. Section 31-18-15.1(A) states that "[t]he court *shall* hold a sentencing hearing to determine if mitigating or aggravating circumstances exist." (Emphasis added.); *see State v. Ayala*, 2006-NMCA-088, ¶ 6, 140 N.M. 126, 140 P.3d 547. The statute does not prescribe any prerequisites to the district court's exercise of this duty.

**{42}** Furthermore, our cases have recognized the importance of mitigating circumstances in sentencing. In *Tomlinson v. State*, 98 N.M. 213, 215, 647 P.2d 415, 417 (1982), the Court held that failure to allow a defendant to allocute before sentence is imposed "renders the sentence invalid." Allocution by the defendant is a form of mitigation evidence. *Id.* Indeed, the New Mexico Supreme Court defined allocution as "the formal inquiry or demand made by the court . . . to accused at the time for pronouncing sentence as to whether accused has anything to say why sentence should not be pronounced on him." *State v. Setser*, 1997-NMSC-004, ¶ 20, 122 N.M. 794, 932 P.2d 484 (internal quotation marks and citation omitted). Similarly, *Black's Law Dictionary* defines allocution as "[a] trial judge's formal address to a convicted defendant, asking him or her to speak in mitigation of the sentence to be imposed," or "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy . . . or say anything else in an effort to lessen the impending sentence." *Black's Law Dictionary* 88 (9th ed. 2009). In *Tomlinson*, the fact that the district court allowed the defendant to allocate after sentence was imposed was "no more than an empty gesture" because of the potential impact of the defendant's statement on the sentence. 98 N.M. at 215, 647 P.2d at 417 ("There is no substitute for the impact on sentencing which a defendant's own words might have if he chooses to make a statement." (alteration, internal quotation marks, and citation omitted)). Implicit in the *Tomlinson* holding is the recognition that if a defendant chooses to speak, the sentencing court must consider his statement before imposing a sentence. *See id.*

**{43}** In *Juan*, the district court reasoned that, because one-third of a life sentence could not be calculated, a life sentence could not be altered under Section 31-18-15.1. *Juan*, 2010-NMSC-041, ¶ 35. "Thus, the [district] court did not consider any mitigating evidence and imposed a life sentence, stating that its 'hands were tied.' " *Id.* (alteration omitted). On appeal, the New Mexico Supreme Court determined that the district court misconstrued Section 31-18-15.1 and held that its failure to consider mitigating evidence was improper. *Juan*, 2010-NMSC-041, ¶¶ 39, 43. In that case, the district court's misapprehension of the law as to his ability to mitigate was error; the result of the error was that mitigating factors were not considered. The Court concluded that the district court "improperly failed to consider mitigating evidence at [the d]efendant's sentencing hearing pursuant to Sections

15

31-18-15 and 31-18-15.1." *Juan*, 2010-NMSC-041, ¶ 43; *accord State v. Wilson*, 2001-NMCA-032, ¶ 15, 130 N.M. 319, 24 P.3d 351 (stating that a sentencing "hearing is mandatory in all cases and a sentencing court is required to consider . . . mitigating circumstances before imposing any felony sentence"), *overruled on other grounds by State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144; *Ayala*, 2006-NMCA-088, ¶ 6 ("A district court must hold a sentencing hearing to determine the existence of mitigating or aggravating circumstances.") (internal quotation marks and citation omitted); *cf. State v. Aragon*, 2009-NMCA-102, ¶ 21, 147 N.M. 26, 216 P.3d 276 (holding that even in the absence of a formal motion, the fact that the judge was aware of the potentially mitigating factors when sentencing the defendant was sufficient to eliminate prejudice where the defendant argued ineffective assistance of counsel).

**{44}**   Here, the district court's statements at the hearings suggest that he did not consider mitigating evidence. *See State v. Bonilla*, 2000-NMSC-037, ¶ 11, 130 N.M. 1, 15 P.3d 491 (rejecting the State's argument that, because the defendant received a sentence within the statutory guidelines, the sentence was "per se non-violative of a defendant's rights" and considering the judge's statements at the hearing). Specifically, his statements that he "didn't even really look at the mitigation statutes, haven't seen a formal request for mitigation[,]" and "I don't have any discretion in count one, it's an eighteen-year mandatory sentence, I don't have any discretion in that count at all[,]" suggest that either he believed a formal motion was required to trigger exercise of that authority or he did not believe he had statutory authority to reduce the sentence. As the State points out, the district court judge granted a continuance of the sentencing hearing to allow defense counsel to file a motion and it is unlikely that he would have done so "if he believed he lacked authority to act on the motion." When considered in light of the district court's later statements, however, this circumstance indicates that the judge felt that a motion by defense counsel was required.

**{45}**   The district court has an obligation to consider mitigating factors in sentencing. Failure to do so, whether based on a misapprehension of the authority given by statute or a belief that a formal motion is required, is an abuse of discretion. We conclude that the district court here did not consider mitigating circumstances and, therefore, remand for resentencing. To be clear, our holding is not a comment on the length of the sentence. "Defendant is entitled to no more than a sentence prescribed by law," *State v. Cumpton*, 2000-NMCA-033, ¶ 12, 129 N.M. 47, 1 P.3d 429, and there is no abuse of discretion when mitigating circumstances are considered and rejected. Our holding is limited to Section 31-18-15.1's requirement that the district court consider mitigating circumstances in sentencing.

**CONCLUSION**

**{46}**   We affirm Defendant's convictions and remand for resentencing consistent with this Opinion.

**{47}**   **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Sotelo*, No. 31,061**

**APPEAL AND ERROR**
Harmless Error
Remand
Standard of Review

**CONSTITUTIONAL LAW**
Double Jeopardy

**CRIMINAL LAW**
Aggravating or Mitigating Circumstances
Battery
Domestic Violence
Kidnaping
False Imprisonment
Unitary Conduct
Witness Intimidation

**CRIMINAL PROCEDURE**
Double Jeopardy
Effective Assistance of Counsel
Lesser Included Offense

**STATUTES**
Legislative Intent

**TORTS**
Immunity
Tort Claims Act