This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                    No. A-1-CA-35353

**MARIO RODRIGUEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

**{1}** Defendant Mario Rodriguez appeals his convictions for kidnapping and reckless child abuse by endangerment. Defendant asserts that there was insufficient evidence to support either conviction. We affirm in part and reverse in part.

**BACKGROUND**

**{2}** On April 5, 2011, Defendant drove from Alamogordo, New Mexico to Albuquerque, New Mexico to check on I.R., the child, and spend the day with her. He was concerned that I.R. was being maltreated. There was conflicting testimony whether Defendant is I.R.'s biological father; however, it is undisputed that I.R. referred to Defendant as "daddy." When Defendant first got to Albuquerque, he checked into his hotel room at the Route 66 Casino. Defendant then went to I.R.'s great grandmother's apartment to find I.R. Since great grandmother did not know where I.R. was, Defendant left the apartment. As he was leaving, he noticed toys he previously purchased for I.R. on the landing of a second-story apartment in the same apartment complex. There was conflicting testimony about what happened next.

**{3}** According to the testimony of I.R.'s aunt, Amanda Martinez, she and I.R. were watching cartoons when Defendant started kicking her door repeatedly. This frightened I.R. Ms. Martinez was not going to open the door but was afraid Defendant would kick the door in. Defendant wanted to take her, but Ms. Martinez told him that

I.R.'s mother did not want him to take I.R. Defendant then picked up I.R. from the back of her shirt, choking her. Ms. Martinez testified that I.R. was "initially happy to see her dad until he got crazy and yanked her up[.]" Ms. Martinez told Defendant he could not take I.R., but he walked out the door anyway.

{4}      Ms. Martinez then testified that she began screaming and trying to grab Defendant to slow him down. Defendant responded by punching Ms. Martinez repeatedly. Defendant then reached back, grabbed Ms. Martinez by the shirt and threw her over the second-floor railing and onto the ground. Defendant ran down the stairs, stumbling towards the bottom of the flight and falling upon I.R. Defendant regained his feet, picked up I.R., and began running while I.R. reached towards Ms. Martinez, screaming and crying.

{5}      According to Defendant's testimony, Defendant knocked on the apartment door and Ms. Martinez, a woman with whom Defendant was familiar, answered the door. Ms. Martinez allowed Defendant into the apartment where I.R. ran to Defendant saying "daddy," and Defendant lifted her up in one arm. Defendant told Ms. Martinez that he wanted to take I.R. for the day, get some food, and give her clothes he brought for her. Ms. Martinez tried calling I.R.'s mother, but could not get a hold of her. He said he was taking I.R. and started walking out the door.

**{6}** Defendant testified that it was then that Ms. Martinez grabbed I.R. by the arm as he descended the stairs, resulting in scratches on I.R.'s arm. Defendant admitted that he pushed Ms. Martinez, but he was not sure how Ms. Martinez fell. He thought that she may have fallen down the last few stairs after he pushed her. Defendant and Ms. Martinez both testified that at some point during the scuffle, Defendant lost one of his sandals.

**{7}** Defendant ran to the car, buckled I.R. into a car seat, changed his shoes, and drove to Route 66 Casino and Hotel located outside of Albuquerque. At the hotel, Defendant attended to I.R.'s scratches. After Defendant was made aware of an Amber Alert for I.R., he turned off the television and took I.R. to get something to eat. They took the food back to the hotel room where they watched cartoons. While they were at the hotel, I.R. confirmed that she was being locked in a closet.

**{8}** Later, Defendant's father, Defendant's aunt Tricia Saucedo, and a man later identified as Ryan Beach arrived at Defendant's hotel room. After arriving at the hotel room, Ms. Saucedo called the Amber Alert hotline. Ms. Saucedo did not speak to anyone at the hotline, instead she hung up the phone with the apparent knowledge that the phone would be traced and the police would find I.R. Again, there was conflicting testimony about what transpired next.

{9}     Arresting officers testified that they tried to gain entry to the hotel room using an emergency key card obtained from the front desk but found the door to be latched from the inside. Noting the exigency and heightened potential for danger of the situation, officers testified that they used a one-hand ram to break down the door. They arrested Defendant and took I.R. into protective custody. Defendant testified that the arresting officers did not give him a chance to open the door, but broke it down without knocking, entered the room, and "beat [him]" before placing him under arrest.

{10}     Defendant was charged with aggravated burglary, aggravated battery resulting in great bodily harm, intentional child abuse, kidnapping, and reckless child abuse by endangerment. After a jury trial, Defendant was convicted of kidnapping and reckless child abuse by endangerment, and was acquitted of the remaining charges. On appeal, Defendant argues that there was insufficient evidence to support either conviction.

**DISCUSSION**

**Standard of Review**

{11}     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is defined as "such relevant evidence as a

5

reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**A.    Kidnapping**

{12}    Defendant asserts that there was insufficient evidence to conclude that I.R. was a hostage and therefore insufficient evidence to support his conviction of kidnapping. Defendant also asserts that because the law presumed him to be the father of I.R. he could not have been convicted of kidnapping his own daughter. Because we agree with Defendant's first assertion, we reverse.

{13}    "Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent: (1) that the victim be held for ransom; (2) that the victim be held as a hostage or shield and confined against his will; (3) that the victim be held to service against the victim's will; or (4) to inflict death, physical injury or a sexual offense on the victim." NMSA 1978, § 30-4-1(A) (2003).

6

The parties agree that the only element in dispute is whether Defendant held I.R. as a hostage and confined her against her will.

**{14}** Our Supreme Court has defined hostage as "impl[ying] the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." *State v. Crump*, 1971-NMSC-051, ¶ 25, 82 N.M. 487, 484 P.2d 329. At trial, the State relied on a dictionary definition for hostage. However, on appeal the State concedes that the *Crump* definition is applicable. The State argues that there was sufficient evidence that I.R. was a hostage because Defendant had no plan to return I.R. and intended to keep her. The State contends that this is supported by substantial evidence in the record: (1) Ms. Saucedo intended to take I.R. back to Alamogordo; (2) Defendant was concerned about I.R.'s wellbeing; and (3) Defendant had a large amount of clothing for I.R. The State asserts that this satisfies *Crump* because Defendant intended to "h[o]ld [I.R.] as security for the forbearance from giving the mother legal custody" and circumvent the judicial function of establishing custody or evaluating the child's home for mistreatment. We disagree.

**{15}** The State further argues that trial testimony established that Ms. Saucedo initially intended to take I.R. to Alamogordo and, therefore, Defendant intended to hold I.R. as a hostage. While the assertion that Ms. Saucedo initially intended to take

I.R. back to Alamogordo is factually accurate,[1] the uniform jury instruction provides that in order to find a defendant guilty of kidnapping, the jury must conclude, among other elements, that "[t]he *defendant* intended . . . to hold [the victim] as a hostage or shield against [the victim's] will." UJI 14-403 NMRA (emphasis added) (alterations omitted). Defendant testified that he intended to come to Albuquerque with a female friend and spend the night at Route 66 Casino. He intended to check on I.R., bring her clothes he bought over time, spend the day with I.R., and take her to get something to eat. He never intended to take her back to Alamogordo.

{16} Because kidnapping requires a specific intent to do a further act, Ms. Saucedo's intentions are insufficient evidence to prove that Defendant intended to hold I.R. as a hostage. *See State v. Sotelo*, 2013-NMCA-028, ¶ 12, 296 P.3d 1232 (explaining the difference between kidnapping, a specific intent crime, and false imprisonment, a lesser included general intent crime); *see also* UJI 14-141 NMRA ("A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful. Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him." (alterations and footnotes omitted)).

---

[1]Ms. Saucedo was charged with custodial interference for her role in this matter.

8

**{17}** The State next asserts that trial testimony established that Defendant was concerned about the wellbeing of I.R. and the conditions of her care with her mother. Therefore it was "reasonable to conclude that Defendant planned to deprive the mother of custody." Again, while the assertion that Defendant was concerned about the wellbeing of I.R. is factually accurate, there is a gap in the State's argument. The State has failed to develop its argument equating concern for a person's wellbeing as evidence of an intention to hold that person as a hostage, against their will. This Court has no duty to review an argument that is not adequately developed. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim). Additionally, because the State cites no legal authority in support of its argument, we assume that no authority exists to support this assertion. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

**{18}** Finally, the State contends that the trial testimony established that Defendant possessed a large amount of clothing and shoes for a child and that this is evidence

9

that Defendant intended to hold I.R. as a hostage against her will. Once again, while the assertion that Defendant possessed a large any amount of clothing for a child is factually accurate, we are not convinced that this qualifies as substantial evidence of an intention to hold I.R. as a hostage. Furthermore, the State does not cite to any authority that supports the assertion that possession of a large amount of clothing for a child is sufficient evidence to establish specific intent to hold a victim as a hostage. Accordingly, we assume no such authority exists. *See Curry*, 2014-NMCA-031, ¶ 28.

{19} Last, the State asserts that "the jury could have determined that Defendant was holding I.R. hostage for the prevention of his own arrest." As support, the State cites to a North Carolina case that is factually distinguishable and not persuasive to our analysis. The evidence in the North Carolina case established that the defendant spoke with several people on the telephone and expressed that "he was not coming out unless they promised him he would not go to jail." *State v. Moore*, 340 S.E.2d 401, 403 (N.C. 1986). There was no such evidence to connect the State's theory with the sweeping conclusion that because Defendant did not want to be arrested, therefore he had to have been holding I.R. as a hostage. Despite the State's general assertion that testimony in this case established Defendant's fear of being apprehended by law enforcement, we are unable to find any evidence in the record to support the second part of its theory—that such fear was sufficient to establish specific intent to hold the child hostage.

10

**{20}** We hold that the State failed to satisfy the second element of kidnapping, that I.R. met the definition of a hostage, pursuant to *Crump*. *See State v. Herrera*, 2014-NMCA-007, ¶ 8, 315 P.3d 343 (noting that a conviction is valid only upon a finding of every element of the offense beyond a reasonable doubt). As a result, we reverse Defendant's conviction for kidnapping.

**B.     Reckless Child Abuse**

**{21}** Defendant argues that there was insufficient evidence to support his conviction of reckless child abuse because it was too speculative to infer that I.R. was placed in a situation that endangered her life or health.

**{22}** "Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health; (2) tortured, cruelly confined or cruelly punished; or (3) exposed to the inclemency of the weather." NMSA 1978, § 30-6-1(D) (2009). The mens rea "negligent" amounts to criminal negligence, which is defined as when "a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3); *see also State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 (holding that criminal negligent child abuse should be labeled reckless child abuse). This provision is intended to punish conduct that creates a substantial and foreseeable risk of harm to the child. *See State v. Chavez*, 2009-NMSC-035, ¶ 22, 146 N.M. 434, 211 P.3d 891

11

(providing that "the jury is instructed that it must find that defendant's conduct created a *substantial and foreseeable risk* of harm (internal quotation marks and citation omitted)). Thus, the defendant must place the child "within [a] zone of danger and physically close to an inherently dangerous situation." *State v. Gonzales*, 2011-NMCA-081, ¶ 18, 150 N.M. 494, 263 P.3d 271 (internal quotation marks and citation omitted). The statute contemplates that a defendant's conduct exposes a child to significant risk of harm even when the child does not suffer a physical injury. *See Chavez*, 2009-NMSC-035, ¶ 15. There must be some antecedent conduct by the defendant that places the child in the dangerous situation. *See State v. Garcia*, 2014-NMCA-006, ¶ 10, 315 P.3d 331 (holding that absence of an antecedent event precluded a finding of reckless child abuse by endangerment). We may look to the cumulative effect of all possible evidence in determining whether to uphold a conviction rather than specific isolated incidents. *See id.* ¶ 30 (Sutin, J., specially concurring). However, this crime is "reserved for the most serious occurrences, and not for minor theoretical dangers." *Id.* ¶ 10.

{23}     Defendant argues that the hotel room did not have drugs, alcohol, or weapons in it and thus the potential harm to I.R. was too speculative to sustain a conviction for reckless child abuse. The State argues that the jury could have concluded that the elements for reckless child abuse were met beyond a reasonable doubt conceivably in two situations: first, when Defendant engaged in a physical altercation with Ms.

Martinez and fell down the stairs while holding I.R.; second, when Defendant, as characterized by the State, placed I.R. in a hostage situation by failing to turn I.R. over before law enforcement broke down the door to the hotel room.

**{24}** We have concluded that I.R. was not a hostage, therefore she was not in a hostage situation. However, we conclude that the jury could have reasonably determined that there was sufficient evidence to for the jury to find that Defendant did place I.R. in a situation that may have endangered the child's life or health. The fact that there was no alcohol, drugs, or weapons in the hotel room does not immediately mean there was no foreseeable danger to I.R. in the hotel room.

**{25}** We look at "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26; *see State v. Cabezuela*, 2015-NMSC-016, ¶ 23, 350 P.3d 1145 ("We have previously observed . . . that the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)).

**{26}** The circumstances involving the Amber Alert and eventual apprehension of Defendant was sufficient evidence for the jury to conclude that Defendant put I.R. in a situation that may have endangered I.R.'s life or health. Officers testified that Defendant maintained control over I.R. for several hours with full knowledge that there had been an Amber Alert issued. Defendant had a family member call the Amber

Alert hotline so the call could be traced. Defendant did not immediately surrender. Law enforcement had to hit the hotel room door with a one-hand ram to gain entry and then force Defendant to the ground to apprehend him. This all unfolded with I.R. in the room.

{27} Finally, Defendant's own testimony provided a basis to conclude that he put I.R. in a situation that may have endangered I.R.'s life or health. Defendant testified that he was *worried* about a violent confrontation with police and had his family join him in the hotel room to serve as witnesses for potential police brutality.

{28} I.R. was placed in a zone of danger and could have been seriously injured as a result of the arresting officers' entry into the hotel room and the ensuing scuffle to apprehend Defendant. The antecedent to this was the call to the Amber Alert hotline and the failure to turn I.R. over in a peaceful manner. Defendant knew or should have known of the danger involved and acted with a reckless disregard for the safety of I.R. We conclude that there was sufficient evidence of the Amber alert and hotel apprehension circumstances to support a conviction for reckless child abuse. We need not consider the events at the apartment complex.

**CONCLUSION**

{29} For the foregoing reasons, we reverse Defendant's conviction for kidnapping, affirm Defendant's conviction for reckless child abuse, and remand this case for re-sentencing consistent with this opinion.

{30}     IT IS SO ORDERED.

_____
M. MONICA ZAMORA, Judge

WE CONCUR:


_____
JULIE J. VARGAS, Judge


_____
STEPHEN G. FRENCH, Judge