2005-NMCA-010

104 P.3d 1114

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Christopher ARMIJO, Defendant–**
**Appellant.**

**No. 23,775.**

Court of Appeals of New Mexico.

Dec. 3, 2004.

hancement), conspiracy to commit armed robbery, aggravated assault (deadly weapon) (firearm enhancement), conspiracy to commit aggravated assault (deadly weapon), tampering with evidence, conspiracy to commit tampering with evidence, and contributing to the delinquency of a minor. Defendant raises three issues on appeal: (1) whether there was insufficient evidence to support the convictions for tampering with evidence and conspiracy to tamper with evidence; (2) whether the convictions for aggravated assault and conspiracy to commit aggravated assault violate his right to be free from double jeopardy; and (3) whether the convictions for aggravated assault and armed robbery violate his right to be free from double jeopardy. We affirm in part and reverse in part.

## I.  BACKGROUND

{2} On May 30, 2000, David Brown (Victim) met Defendant and Travis Zabroski (Zabroski), a minor, in an alley behind a fast-food restaurant in Albuquerque. Victim was in his pickup truck; Defendant stood up against the truck on the driver's side, and Zabroski slid into the passenger seat. Zabroski and Defendant stole marijuana that was on the seat beside Victim, and Victim was shot in the head. Victim also testified that Defendant struck him in the head with the butt of a gun. At trial, there was disputed testimony as to the purpose of the meeting among Victim, Defendant, and Zabroski; who shot Victim; and what occurred after the shooting.

## II.  DISCUSSION

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Houston Ross, Albuquerque, NM, for Appellant.

### A.  Tampering with Evidence and Conspiracy to Tamper with Evidence

{3} Defendant claims that there is insufficient evidence to support his convictions for tampering with evidence and conspiracy to tamper with evidence. We agree.

*OPINION*

CASTILLO, Judge.

{1} Defendant Christopher Armijo was convicted of armed robbery (firearm en-

### 1.  Standard of Review

{4} In reviewing the sufficiency of the evidence in a criminal case, we must

determine whether substantial evidence, either direct or circumstantial, exists to support a verdict of guilty beyond a reasonable doubt for every essential element of the crime at issue. *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Resolving all conflicts, indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary, this Court reviews evidence in the light most favorable to the verdict to ensure that a rational jury could have found each element of the crime established beyond a reasonable doubt. *Id.* Finally, we observe that it is for the fact-finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence; we will not substitute our judgment as to such matters. *State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992).

## 2. Analysis

{5} To convict Defendant of tampering with evidence, the State had to prove, beyond a reasonable doubt, that Defendant "hid a handgun" and "intended to prevent the apprehension, prosecution or conviction of himself and/or Travis Zabro[ ]ski." *See* NMSA 1978, § 30–22–5(A) (2003). To convict Defendant of conspiring to tamper with evidence, the State had to prove, beyond a reasonable doubt, that Defendant "and another person by words or acts agreed together to commit [t]ampering with [e]vidence." *See* NMSA 1978, § 30–28–2 (1979). Finally, Defendant could be convicted as an accessory to tampering with evidence if he intended the crime to be committed and if he "helped, encouraged or caused the crime[ ] to be committed." *See* NMSA 1978, § 30–1–13 (1972).

{6} The State presented the testimony of Officer Bieniek, who testified, without a hearsay objection, to an earlier statement made by Zabroski during the investigation. Bieniek testified that Zabroski told him that Defendant was with Zabroski when the shooting took place, when he ran down the alley, and when he ran back to get the marijuana. Bieniek then testified that Zabroski told him that they drove around and that he dropped Defendant, along with the marijuana, at Defendant's apartment. When asked if Zabroski indicated what happened to the weapon, Bieniek responded, "He dumped it in a portapotty[,]" where it was later found. Officer Herrera testified that she located the gun in the portapotty. At trial, Zabroski testified he took the gun apart and threw the pieces out, one by one.

{7} Review of the trial transcript reveals no evidence placing Defendant with Zabroski when he disposed of the gun and no evidence suggesting that Defendant and Zabroski ever discussed disposal of the gun. *See Roybal*, 115 N.M. at 33–34, 846 P.2d at 339–40 (holding that there was insufficient evidence to convict the defendant of tampering because there was no evidence of an intentional act by the defendant, such as flushing evidence down the toilet, actively concealing a gun, or throwing a bottle of drugs into a waiting car). To the contrary, Zabroski testified at trial that Defendant was not with him when Zabroski disposed of the gun. His trial testimony regarding the gun was not contradicted by Bieniek's testimony as to Zabroski's earlier statement. Finally, Defendant testified that he was not with Zabroski when he disposed of the gun.

{8} The State argues that Defendant's tampering convictions are supported by State's exhibit 28. This exhibit, a taped recording of Zabroski's earlier statement to Bieniek, was played to the jury at trial. In the taped statement, Zabroski states that Defendant was driving the car when Zabroski threw the gun into the portapotty.

■ {9} The State errs in relying on Zabroski's earlier taped statement as substantive evidence supporting Defendant's conviction because the taped statement was admitted only for purposes of impeachment. *See State v. Gutierrez*, 1998–NMCA–172, ¶ 10, 126 N.M. 366, 969 P.2d 970 (holding that a prior inconsistent statement not under oath is inadmissible as substantive evidence). A prior inconsistent statement is admissible as substantive evidence only if it is "given under

oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Rule 11–801(D)(1)(a) NMRA. At trial, the court specifically instructed the jury that the tape was only being played as a prior inconsistent statement going to Zabroski's credibility. As Zabroski's prior statement is not substantive evidence, it cannot be used to support Defendant's conviction. *See Gutierrez*, 1998–NMCA–172, ¶ 10, 126 N.M. 366, 969 P.2d 970.

{10} In the absence of the taped statement by Zabroski, there is no evidence suggesting that Defendant encouraged Zabroski to dispose of the gun or was present when Zabroski threw it in the portapotty. *Cf. State v. Nieto*, 2000–NMSC–031, ¶¶ 9, 30, 129 N.M. 688, 12 P.3d 442 (holding that the defendant's conviction as an accomplice for tampering with evidence was supported by testimony that the defendant assisted in using and removing the shotguns from the crime scene and evidence that the defendant was present when his accomplices burned the ski masks and gloves used to commit the crimes). Viewing the evidence in the light most favorable to the verdict, we hold that there was insufficient evidence to support Defendant's convictions for tampering with evidence and conspiracy to tamper with evidence, and we reverse those convictions.

## B. Conspiracy to Commit Aggravated Assault

{11} Defendant claims that his convictions for aggravated assault and conspiracy to commit aggravated assault violate his right to be free from double jeopardy. We agree that the conviction for conspiracy to commit aggravated assault must be reversed because the conviction for conspiracy to commit armed robbery is based upon the same agreement. Although we are not bound by the State's concession, *State v. Foster*, 1999–NMSC–007, ¶ 25, 126 N.M. 646, 974 P.2d 140, we note that the State does not oppose reversal of Defendant's conviction for conspiracy to commit aggravated assault.

{12} Defendant does not challenge his conviction for conspiracy to commit armed robbery. The evidence shows that before meeting with Victim, Defendant and Zabroski had agreed to rob Victim of marijuana. Zabroski stated that they planned to get back from Victim what he had previously stolen from Zabroski. However, there is no evidence of an additional, separate agreement to commit an aggravated assault upon Victim. As there was only one agreement, there can only be one conviction for conspiracy. *See State v. Ross*, 86 N.M. 212, 214–15, 521 P.2d 1161, 1163–64 (Ct.App.1974) (holding that the number of conspiracies is determined by the number of agreements—if there is one agreement to commit multiple criminal acts, the perpetrators are guilty of only one conspiracy); *see also State v. Jackson*, 116 N.M. 130, 134, 860 P.2d 772, 776 (Ct.App.1993) (holding that the defendant's conviction and punishment for two conspiracies violated his double jeopardy rights because the evidence showed that the defendant and his accomplice had only one agreement to find someone to rob, even though they eventually robbed two victims).

{13} Therefore, we reverse Defendant's conviction for conspiracy to commit aggravated assault.

## C. Aggravated Assault and Armed Robbery

### 1. Standard of Review

{14} Defendant contends that his convictions for aggravated assault and armed robbery violate his right to be free from double jeopardy. We disagree.

{15} The constitutional prohibition against double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora*, 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. In this case, we are faced with multiple punishments, rather than successive prosecutions; in particular, this is a so-called "double description" case. *See State v. Meadors*, 121 N.M. 38, 49–50, 908 P.2d 731, 742–43 (1995) (internal quotation marks and citation omitted). Our analysis of this issue

relies on the two-pronged test set forth in *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). Under the first prong, we ask "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. "The second step is to ask whether the [l]egislature intended to impose multiple punishments for the unitary conduct." *State v. Carrasco*, 1997–NMSC–047, ¶ 22, 124 N.M. 64, 946 P.2d 1075; *see Swafford*, 112 N.M. at 14, 810 P.2d at 1234. "The first inquiry, whether the conduct is unitary, is a mixed question of law and fact . . . , which we review de novo. The second inquiry . . . is a legal question involving scrutiny of the elements of the statutes in question." *State v. Duran*, 1998–NMCA–153, ¶ 15, 126 N.M. 60, 966 P.2d 768 (citation omitted).

## 2. Analysis

{16} In determining whether the conduct was unitary, we consider whether the illegal acts are "separated by sufficient indicia of distinctness." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. We consider as " 'indicia of distinctness' the separation of time or physical distance between the illegal acts, 'the quality and nature' of the individual acts, and the objectives and results of each act." *Mora*, 1997–NMSC–060, ¶ 68, 124 N.M. 346, 950 P.2d 789 (quoting *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34).

{17} The State contends that the acts constituting the two offenses are not unitary because they were committed by different persons. It argues that Zabroski committed the acts constituting the armed robbery and that Defendant was found guilty of armed robbery as an accessory. The State further contends that Defendant personally committed the act constituting the assault (striking Victim with a gun). Our review of the record does not indicate such a clear demarcation between the acts of Zabroski and those of Defendant.

{18} To the contrary, there was evidence from which the jury could infer that Defendant was an active participant in the armed robbery. Victim's testimony suggests that Defendant hit him shortly before or after the marijuana was taken by either Defendant or Zabroski. Furthermore, the evidence suggests that in committing the armed robbery and aggravated assault, Defendant and Zabroski surrounded Victim in his pickup truck with Zabroski in the passenger-side seat and Defendant standing by the driver-side window, where Victim was seated. After taking the marijuana from Victim, Zabroski and Defendant drove off together. There was also testimony that Defendant took the marijuana with him, once Zabroski dropped him off. Finally, Victim's testimony that Defendant struck him with the butt of a gun suggests that Defendant, as well as Zabroski, was armed at the time of the robbery. Based on the foregoing, the jury could have determined that both Zabroski and Defendant robbed Victim and that during the robbery, Defendant assaulted Victim. Therefore, we hold that the armed robbery and the aggravated assault were not sufficiently separated by time, space, or objective to be deemed non-unitary.

{19} We further observe that it is impossible to discern from the record whether Defendant was convicted as a principal on both the aggravated assault and the armed robbery charges. Our review of the jury instructions, the verdict forms, and the judgment and sentence do not clearly indicate that Defendant was in fact convicted of armed robbery as an accessory, rather than as a principal. Our case law provides that in such a situation, we must find that double jeopardy is implicated. *See Foster*, 1999–NMSC–007, ¶¶ 27–28, 126 N.M. 646, 974 P.2d 140 (stating that double jeopardy principles require reversal of a conviction when the jury instructions allow the jury to return a guilty verdict based on a legally inadequate alternative and when the record contains no indication of whether or not the jury relied on that alternative).

{20} The State has failed to provide us with any information establishing that Defendant was convicted of armed robbery as an

accessory. Instead, the State merely argues that the evidence supports an accessory theory. However, the pertinent inquiry is not whether the jury could have convicted Defendant as an accessory, but whether the jury could also have found Defendant liable as a principal and, if so, whether it is possible to determine upon which theory the jury convicted Defendant. *See id.* As the record and transcripts indicate that the jury could have determined that both Zabroski and Defendant robbed Victim, we hold that Defendant's actions in connection with the armed robbery are unitary with his act of assaulting Victim.

{21} Having determined that the conduct was unitary, we reach the second step in the *Swafford* analysis, which asks "whether the legislature intended multiple punishments for unitary conduct." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. When, as in this case, the statutes at issue do not contain a clear expression of legislative intent, we apply the test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and examine the elements of each statute to determine whether one statute is subsumed within the other by determining whether one statute requires proof of an additional fact that the other does not. *Id.* "If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes— punishment cannot be had for both." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. "Conversely, if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a presumption that the statutes punish distinct offenses[, but t]hat presumption ... is not conclusive and it may be overcome by other indicia of legislative intent." *Id.*

{22} In this case, we are comparing the elements of aggravated assault, a compound offense that has three alternate ways of being charged, with armed robbery, another offense for which the statute contains alternatives. *See* NMSA 1978, § 30–3–2 (1963);

NMSA 1978, § 30–16–2 (1973). When applying the *Blockburger* test to compound offenses or offenses that may be charged in alternate ways, we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements. *See Carrasco*, 1997–NMSC–047, ¶ 27, 124 N.M. 64, 946 P.2d 1075; *State v. Lefebre*, 2001–NMCA–009, ¶¶ 21–22, 130 N.M. 130, 19 P.3d 825.

{23} The jury instruction for aggravated assault required the jury to find, beyond a reasonable doubt, that

1. [D]efendant struck at David Brown with a handgun;

2. [D]efendant's conduct caused David Brown to believe [D]efendant was about to intrude on David Brown's bodily integrity or personal safety by touching or applying force to [him] in a rude, insolent or angry manner; ...

3. [a] reasonable person in the same circumstances as David Brown['s] would have had the same belief; [and]

4. [D]efendant used a handgun.

*See* UJI 14–305 NMRA.

{24} In order to convict Defendant of armed robbery, the jury had to find, beyond a reasonable doubt, that

1. [D]efendant took and carried away a bag of marijuana from David Brown, or from his immediate control[,] intending to permanently deprive David Brown of the property;

2. [D]efendant was armed with a handgun, a deadly weapon[; and]

3. [D]efendant took the marijuana by threatened force or violence.

*See* UJI 14–1621 NMRA.

{25} A defendant could be convicted of aggravated assault by merely threatening the victim with bodily harm. *See* § 30–3–2 ("Aggravated assault consists of either ... unlawfully assaulting or striking at another with a deadly weapon."). However, in this case, the jury could only convict Defendant if

it found, beyond a reasonable doubt, that Defendant struck at Victim. So, in this case, aggravated assault contains an element that armed robbery does not: striking at Victim, instead of just threatening him. Likewise, armed robbery contains an element that aggravated assault does not: taking Victim's property with the intent to permanently deprive Victim of the property. *See* § 30–16–2.

{26} In the abstract, both aggravated assault and armed robbery may involve the use of force or the threat of force. Therefore, the two statutes share common ground in theory, and a defendant's conviction could rely on similar, if not identical evidence. *See State v. Fuentes*, 119 N.M. 104, 106, 888 P.2d 986, 988 (Ct.App.1994). However, under the alternatives presented to the jury in this case, the central element of armed robbery does not subsume the element of aggravated assault—the striking at Victim. *Id.* at 107, 888 P.2d at 989. Therefore, "each still requires proof of a fact the other does not, and a conviction of each may stand independently of the other." *Id.* (internal quotation marks omitted). As each offense includes at least one statutory element not included in the other, the presumption is that the legislature intended to punish separately the two offenses. *See Carrasco*, 1997–NMSC–047, ¶ 28, 124 N.M. 64, 946 P.2d 1075; *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{27} In his reply brief, Defendant argues that his convictions must be reversed, based upon our previous holding in *State v. Maes*, 100 N.M. 78, 81, 665 P.2d 1169, 1172 (Ct.App. 1983), in which we determined that the crimes of aggravated assault and robbery must merge, as the operative elements of the two are the same. In *Maes*, we stated that "it is plain that robbery requires proof of theft by use or threatened use of force and assault requires proof of an attempted battery of which the victim is reasonably in fear of receiving." *Id.*

{28} We no longer consider *Maes* to be the controlling authority, however, because the analysis contained therein predates, and has been replaced by, the two-pronged analysis

mandated by *Swafford*. *See Fuentes*, 119 N.M. at 106–07, 888 P.2d at 988–89 (overturning cases decided prior to *Swafford* that held aggravated battery was subsumed by the crime of robbery, since the *Swafford* test clarifies that the statutory elements of the crimes determine whether each requires proof of a fact that the other does not).

{29} Finally, we consider whether there are any other indicators of legislative intent that might serve to rebut the presumption that the statutes punish different offenses, thereby permitting separate punishments. *See Fuentes*, 119 N.M. at 108, 888 P.2d at 990. "In this context, '[t]he court must identify the particular evil sought to be addressed by each offense.'" *Id.* (quoting *Swafford*, 112 N.M. at 14, 810 P.2d at 1234). In determining legislative intent, we look first to the purposes of the two statutes because if they are "directed toward protecting different social norms and achieving different policies[, they] can be viewed as separate and amenable to multiple punishments." *Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{30} Although there is some overlap in the purpose of the statutes, they are directed toward protecting different social norms. The armed robbery statute is directed primarily toward protecting against the loss of property. *See Fuentes*, 119 N.M. at 106, 888 P.2d at 988. The aggravated assault statute is directed toward preserving the integrity of a person's body against the threat of injury or, in this case, actual serious bodily injury. *Cf. State v. Vallejos*, 2000–NMCA–075, ¶ 18, 129 N.M. 424, 9 P.3d 668 (recognizing that the "aggravated battery statute is directed at preserving the integrity of a person's body against serious injury"). Therefore, we fail to discern any indication of legislative intent to rebut the *Blockburger* presumption. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

{31} Accordingly, for the reasons stated herein, we hold that Defendant's right to be free from double jeopardy is not violated by his convictions for armed robbery and aggravated assault.

## III. CONCLUSION

{32} Based upon the foregoing, we reverse Defendant's convictions for tampering with

evidence and conspiracy to tamper with evidence because there is insufficient evidence to support those convictions. We also reverse Defendant's conviction for conspiracy to commit aggravated assault, as violating Defendant's right to be free from double jeopardy. Finally, we affirm the remainder of Defendant's convictions.

{33} IT IS SO ORDERED.

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.