This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-34242**

**FRANKIE L. GARDUÑO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1} Defendant Frankie L. Garduño appeals from the district court's judgment, entered pursuant to a jury verdict, for the crimes of attempt to commit armed robbery (firearm enhancement) (Count 1), contrary to NMSA 1978, Sections 30-28-1(B) (1963), 30-16-2 (1973), 31-18-16(A) (1993); and aggravated battery with a deadly weapon (Count 4), contrary to NMSA 1978, Section 30-3-5(C) (1969). Defendant argues that: (1) these convictions violated his constitutional right to be free from double jeopardy; (2) the enhancement of his sentence for attempted armed robbery by one year, pursuant to Section 31-18-16(A), violated his constitutional right to be free from double jeopardy; (3) the district court abused its discretion by denying a severance for the charge of felon in possession of a firearm; (4) the district court erred in excluding evidence of law enforcement bias; (5) there was insufficient evidence to support his convictions; and (6) although the district court merged the charges of assault with intent to commit a violent felony (Count 2 and Count 7), it must enter an order vacating those convictions.

{2} On September 26, 2017, we issued a memorandum opinion affirming Defendant's convictions, but vacating the one-year firearm enhancement on Defendant's conviction for attempted armed robbery. *State v. Garduño*, No. A-1-CA-34242, 2017 WL 4604324, ___-NMCA-___, ¶ 2, ___ P.3d ___(Sept. 26, 2017). We relied on *State v. Branch*, 2016-NMCA-071, 387 P.3d 250, *cert. granted*, ___-

3

NMCERT-___ (No. S-1-SC-35951, July 28, 2016), to hold that the firearm enhancement of Defendant's sentence violated double jeopardy. *Garduño*, ___-NMCA-___, ¶ 15. The Supreme Court denied a writ of certiorari on November 28, 2017. Order at 1, *State v. Garduño*, No. S-1-SC-36717 (Nov. 28, 2017). On December 18, 2017—after quashing a writ of certiorari in *Branch* and remanding to this Court for consideration of the Supreme Court's opinion in *State v. Baroz*, 2017-NMSC-030, 404 P.3d 769, which decided issues related to whether firearm enhancements on sentences for aggravated assault with a deadly weapon violated double jeopardy—the Supreme court remanded this case to this Court for consideration of same. Order at 1, *State v. Garduño*, No. S-1-SC-36687 (Dec. 18, 2017). In *Baroz*, our Supreme Court noted that "[t]he legislative policy behind the firearm sentence enhancement is that a noncapital felony, committed with a firearm, should be subject to greater punishment than a noncapital felony committed without a firearm because it is more reprehensible." 2017-NMSC-030, ¶ 27. Because the Legislature intended to authorize an enhanced punishment when a firearm is used in the commission of aggravated assault, the Court held that "[t]he sentence enhancement does not run afoul of double jeopardy." *Id.*

**{3}** On remand, we withdraw the memorandum opinion issued on September 26, 2017, and substitute this opinion in its stead.

**BACKGROUND**

{4}     As noted in our original opinion, this is a memorandum opinion and the parties are familiar with the facts. Thus, this background section is limited to the factual and procedural events that are required to place our analysis in context. Additional facts will be provided as necessary.

{5}     Cody Tapie and Michelle Radosevich were getting gas at an Allsup's convenience store in Española, New Mexico. Tapie's driver door faced the gas pump and Radosevich's door faced the curb. Tapie was outside the vehicle pumping gas, when a black Ford F-150, driven by Joseph Vigil, pulled up directly behind Tapie's vehicle. Defendant emerged from the passenger side of the truck, approached Radosevich, "lean[ed] in," and began speaking to her.

{6}     Defendant pointed his gun at Radosevich and demanded money. Radosevich advised Defendant that she had no money, having concealed her purse by the driver's seat. After being told that Radosevich had no money, Defendant "turned his attention to [Tapie]." From across the car, Tapie asked Defendant what he was doing, and Defendant pointed his firearm at Tapie and demanded his money.

{7}     In response to Defendant's demand and having focused on him while he was on the other side of the vehicle, Tapie passed his wallet to Defendant "over the car" fearing Defendant would "seriously injure or kill [him]." Defendant seized the wallet

5

and ordered that Tapie get back in the car. Once Tapie was back in the car, Defendant again pointed his gun inside the vehicle. Defendant turned his attention back to Radosevich and demanded money from her.

**{8}** In an attempt to deflect attention from Radosevich, Tapie offered Defendant his sunglasses, which Defendant seized. Defendant again demanded money from Radosevich and then demanded her purse. Radosevich refused to comply. Frustrated with the resistance he was receiving, Defendant opened the passenger door and began striking Radosevich in the head and forehead with the barrel of his firearm as many as five times. The physical attack on Radosevich continued until Defendant was subdued by Tapie and other patrons at the station.

**DISCUSSION**

**I.    Double Jeopardy**

**{9}** The appellate courts "generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737; *see State v. Saiz*, 2008-NMSC-048, ¶ 22, 144 N.M. 663, 191 P.3d 521 ("Double jeopardy presents a question of law, which [the appellate courts] review de novo."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783. "The constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v.*

*Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V; *see also* N.M. Const. art. II, § 15.

**A.      Attempted Armed Robbery and Aggravated Battery With a Deadly Weapon**

{10}      Defendant argues that his convictions for attempted armed robbery and aggravated battery with a deadly weapon violate double jeopardy because they impose multiple punishments for the same conduct. In the present case, "we are faced with multiple punishments, . . . [a] double description case." *Armijo*, 2005-NMCA-010, ¶ 15 (internal quotation marks and citation omitted). Because Defendant's claim is a double description type double jeopardy claim, which involves convictions of multiple statutes based on the same criminal conduct, we apply the analysis set out in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. For double description claims, we follow the two-part test set out in *Swafford*. *State v. Bernal*, 2006-NMSC-050, ¶ 9, 140 N.M. 644, 146 P.3d 289. We first "examine whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges. If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *Id.* (citation omitted).

{11}      Defendant argues that his convictions for attempted armed robbery and aggravated battery with a deadly weapon violate this prohibition because his conduct

was unitary based on the facts and that "[t]his was one series of acts of a similar nature, committed with a single purpose, and which occurred in and around the car over a matter of minutes without interrupting events." Defendant asserts his acts were unitary because "[t]he ongoing attempted robbery of [Radosevich] never stopped and was ongoing, by virtue of the fact that it was not 'successful.' " The State responds that the conduct was not unitary under the facts and double jeopardy does not apply. We agree that Defendant's conduct was not unitary.

{12}     Our analysis begins with an examination of the contours of unitary conduct. As our Supreme Court observed, "[u]nitary conduct is often defined by what it is not. Thus, conduct is not unitary if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness." *State v. Cooper*, 1997-NMSC-058, ¶ 59, 124 N.M. 277, 949 P.2d 660 (internal quotation marks and citation omitted). In analyzing the contours of the "indicia of distinctness," our courts are to consider "the separation between the illegal acts by either time or physical distance, the quality and nature of the individual acts, and the objectives and results of each act." *Id.* (internal quotation marks and citation omitted); *see State v. Sotelo*, 2013-NMCA-028, ¶ 18, 296 P.3d 1232 ("Independent factual bases may be established by determining whether the acts constituting the two offenses are sufficiently separated by time or space, looking to the quality and nature of the acts,

the objects and results involved, and the defendant's *mens rea* and goals during each act." (internal quotation marks and citation omitted)). Distinctness may also be established by the "existence of an intervening event[,] . . . [the] defendant's intent as evidenced by his conduct and utterances[,] . . . [the] number of victims," and "the behavior of the defendant between [acts.]" *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624.

{13}    Regarding whether conduct is unitary, we look for "an identifiable point at which one of the charged crimes had been completed and the other not yet committed." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61; *see Bernal*, 2006-NMSC-050, ¶ 11 (holding that the defendant's conduct is not unitary where the defendant completes one of the charged crimes before committing the other); *State v. Montoya*, 2016-NMCA-098, ¶ 21, 384 P.3d 1114 (same), *cert. denied*, 2016-NMCERT-___, ___ P.3d ___ (No. S-1-SC-36067, Sept. 29, 2016); *State v. Melendrez*, 2014-NMCA-062, ¶ 10, 326 P.3d 1126 (same).

{14}    In this case we conclude that the attempted armed robbery of Radosevich was separated with a sufficient indicia of distinctness from Radosevich's aggravated battery by time, the nature of the individual criminal acts, and the objectives of the criminal acts. Specifically, Defendant's attempted armed robbery of Radosevich was complete before Defendant turned his attention to the armed robbery of Tapie and

9

began to use force or threatened force against him. Defendant's armed robbery of Tapie was complete before Defendant subsequently committed aggravated battery on Radosevich.

**{15}** Our conclusion that Defendant's offenses were not unitary is also premised on *Saiz*, which held that "[t]he proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." 2008-NMSC-048, ¶ 30 (internal quotation marks and citation omitted). Given the indicia of distinctness here and with *Saiz* in mind, we hold that the criminal conduct was not unitary, and thus there was no double jeopardy violation.

**B.      Firearm Enhancement and Merger Issues**

**{16}** The district court sentenced Defendant to an additional year of incarceration, pursuant to Section 31-18-16(A). Defendant appeals the enhancement of his sentence for use of a firearm in the attempted armed robbery of Radosevich relying on this Court's decision in *Branch*, which has since been withdrawn upon order of remand by the Supreme Court. We consider this issue on remand from the Supreme Court in light of the Court's disposition in *Baroz*. *See* Order at 1-2, *State v. Garduño*, No. S-1-SC-36687 (Dec. 18, 2017). In *Baroz*, the defendant was sentenced to a term of eighteen months, followed by one year of parole, for each of his convictions of

aggravated assault with a deadly weapon. 2017-NMSC-030, ¶ 20. The defendant's sentences on these counts were each enhanced by one year pursuant to the firearm enhancement statute, Section 31-18-16(A). *Baroz*, 2017-NMSC-030, ¶ 20. Our Supreme Court rejected the defendant's contention that the firearm enhancement violates double jeopardy because use of a firearm is an element of the underlying crime, aggravated assault with a deadly weapon. *Id.* Concluding that the Legislature intended to authorize an enhanced punishment when a firearm is used in the commission of aggravated assault, our Supreme Court held that "[t]he sentence enhancement does not run afoul of double jeopardy." *Id.* ¶ 27.

{17}    Given our Supreme Court's holding in *Baroz*, we conclude that the firearm enhancement in this case does not violate double jeopardy. We withdraw our previous holding that the enhancement must be vacated and instead affirm the district court's ruling that Defendant's sentence for attempted armed robbery be enhanced by one year pursuant to the statutory firearm enhancement.

{18}    In regard to Defendant's convictions on the "merged" alternative counts, Count 2 and Count 7, the same reasoning under double jeopardy applies. Although the district court correctly merged Count 2 and Count 7 with Count 1 and Count 6, respectively, and did not sentence Defendant on those counts, it inadvertently failed to vacate the alternate convictions. Count 2 and Count 7 must be vacated. *See State*

*v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464, 27 P.3d 456 ("[C]oncurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated."); *see also State v. Mercer*, 2005-NMCA-023, ¶ 29, 137 N.M. 36, 106 P.3d 1283 (stating that "[i]f, upon retrial, the jury again convicts [the d]efendant of alternatives on any count, one alternative conviction must be vacated").

## II.  Failure to Sever Felon in Possession Charge Did Not Prejudice Defendant

{19}    "[T]he standard of review applicable to a severance issue is exceedingly narrow." *State v. Ramming*, 1987-NMCA-067, ¶ 24, 106 N.M. 42, 738 P.2d 914. "The decision to grant a severance motion lies within the trial judge's discretion and will not be overturned on appeal unless the joinder of offenses results in *actual* prejudice against the moving party." *State v. Garcia*, 2011-NMSC-003, ¶ 16, 149 N.M. 185, 246 P.3d 1057. "[The d]efendant bears the burden of establishing that he was actually prejudiced by a failure to sever." *Id.*

{20}    Defendant argues that he moved the district court to sever the felon in possession charge thirteen days before trial. However, "the district court denied severance as 'untimely.' " Defendant contends that the district court erred in failing

to make "an affirmative finding of cross-admissibility" of the evidence pertaining to each charge at separate trials and that admission of the evidence was highly prejudicial to him.

**{21}** Our Supreme Court in *Garcia*, 2011-NMSC-003, ¶ 19, and *State v. Gallegos*, 2007-NMSC-007, ¶ 41, 141 N.M. 185, 152 P.3d 828, provided ample guidance regarding the factors to be considered in deciding whether a defendant suffered actual prejudice from failing to sever a felon in possession charge at trial.

**{22}** Defendant argues that his "being found guilty on all counts, . . . factual similarities linking the offenses, . . . offenses that are inflammatory in nature, . . . [and] proper jury instructions that adequately make clear to the jury that it must not consider evidence inadmissible to a particular count," all demonstrate actual prejudice. *Gallegos*, 2007-NMSC-007, ¶ 41. We disagree.

**{23}** Our review of the record establishes that the State minimally focused on the fact that Defendant was a convicted felon in its opening statement, during its case in chief, or in closing. Moreover, the disclosure of Defendant's status as a "convicted felon" was appropriately handled by the district court when it read the stipulation of the parties to the jury and by the State at the commencement of the State's closing argument when the prosecutor discussed the jury instruction relative to Count 5. The stipulation and the second element of the jury instruction are identical: "Defendant,

in the preceding ten years, was convicted and sentenced to one or more years imprisonment by a court of the United States or by a court of any state[.]"

{24} We conclude that the State did not prejudicially intertwine the offenses during Defendant's trial. *See Garcia*, 2011-NMSC-003, ¶ 20 (describing how the state "generically mentioned the fact of the prior offenses" and in no way intertwined the evidence of the past felony and the armed robbery charges). "Thus, in order for there to be no prejudice at a trial of joined offenses when the simple and distinct evidence as to each would not be cross-admissible at separate trials, court and counsel must exercise a vigilant precision in speech and action far beyond that required in the ordinary trial." *Gallegos*, 2007-NMSC-007, ¶ 40 (internal quotation marks and citation omitted).

{25} The limiting jury instruction given by the district court in regard to the charge of felon in possession of a firearm, weighs against a showing of actual prejudice to Defendant. The district court presented the following jury instruction tendered by Defendant:

> Evidence concerning [D]efendant's status as a felon was admitted for the limited purpose of consideration for Count 5.

> You are instructed that you must not consider such evidence for any purpose other than for your consideration of Count 5.

**{26}** Here, the district court took the proper step to mitigate the impact of the prior felony evidence with its limiting instruction. We conclude, as our Supreme Court did in *Garcia*, "the trial judge's instruction to consider each offense separately adequately addressed any concern that the jury might apply the evidence of prior felonies beyond the felon in possession charge." 2011-NMSC-003, ¶ 21.

## III. Sufficiency of the Evidence

**{27}** Defendant appeals his conviction for conspiracy to commit armed robbery, contending "[t]here was insufficient evidence of an agreement." "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all inferences and evidence that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{28}** Defendant argues that the State's only evidence of a conspiracy was the presence of Vigil in the vehicle when Defendant arrived at the gas station and that

15

Vigil told Defendant to hurry, and the State therefore failed to show an agreement made "by words or acts agreed together to commit armed robbery." We hold that this evidence was sufficient to prove the existence of an agreement. A conspiratorial agreement may be proved by circumstantial evidence, and "the agreement can be nothing more than a mutually implied understanding that can be proved by the cooperative actions of the participants involved." *State v. Roper*, 2001-NMCA-093, ¶ 8, 131 N.M. 189, 34 P.3d 133. After Defendant confronted Tapie and Radosevich, Vigil's calling out to Defendant—"let's go, let's go"—could indicate that Defendant was taking too long, according to a pre-planned arrangement. Vigil also covered his face with his shirt during the incident, and Defendant told a detective it was Vigil's idea, stating, "[h]e's the one that came up with the idea." From these facts, the jury could have reasonably inferred that Defendant and Vigil, by words or acts, agreed to commit armed robbery.

{29} We also reject Defendant's arguments that there was insufficient evidence in support of his convictions for possession of a firearm by a felon, attempted armed robbery, aggravated battery, and armed robbery. Defendant stipulated to his status as a felon, and both Radosevich and Tapie testified that Defendant held a gun during the encounter. Though there is no physical forensic evidence that Defendant possessed a gun, the jury heard evidence establishing that Defendant threatened Radosevich and

Tapie at gunpoint, took Tapie's wallet and sunglasses, tried to rob Radosevich of her money, and struck Radosevich with a gun multiple times when she refused to comply with his demands. The foregoing evidence was sufficient to support Defendant's convictions.

**IV.   Exclusion of Evidence of Law Enforcement Bias**

{30}    Defendant argues the district court erred by excluding evidence critical for Defendant's theory that the police were biased and therefore conducted a faulty investigation. Defendant's asserted defense theory was based on Radosevich and Tapie "target[ing] and attack[ing]" him and that the police conducted a "flawed" or "skewed" investigation because Radosevich's father is a city councilor with influence over the law enforcement officers handling the investigation. During cross-examination, defense counsel attempted to ask Radosevich and one of the investigating detectives about the position Radosevich's father held as a city councilor and his role on the scene immediately after the incident, but the district court sustained the State's objections based on relevance.

{31}    "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling

17

is clearly against the logic and effect of the facts and circumstances of the case." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

{32}     We cannot conclude the district court abused its discretion by sustaining the State's objections. Defense counsel claimed that the presence of Radosevich's father on the scene was relevant because he was so "riled up" about what had happened to his daughter that the police nearly arrested him. As noted in the State's briefing, the reaction of Radosevich's father shows that he responded "as any normal parent would" after discovering what had happened to his daughter, not that he improperly exerted his authority as a politician or ordered law enforcement to investigate the incident a particular way. Defense counsel was unable to offer any other explanation or proof that Radosevich's father attempted to direct the investigation through his words or conduct. We, therefore, cannot "characterize [the ruling] as clearly untenable or not justified by reason[,]" and we hold that the district court did not abuse its discretion. *Id.* (internal quotation marks and citation omitted).

**CONCLUSION**

{33}     We affirm all of Defendant's convictions. The firearm enhancement to the conviction of attempted aggravated robbery is also affirmed. We further direct the district court to vacate Defendant's convictions for Count 2 and Count 7.

{34}     **IT IS SO ORDERED.**

18

_____

**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**