This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38744**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANDREW NICHOLAS MAY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Defendant Andrew Nicholas May raises four issues on appeal of his jury convictions for armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973); larceny, contrary to NMSA 1978, Section 30-16-1 (2006); and, aggravated assault with intent to commit armed robbery, contrary to NMSA 1978, Section 30-3-3 (1977). We reverse in part.

### BACKGROUND

**{2}** On February 26, 2016, two hotels, the Best Western Pine Springs Inn (Pine Springs) and the Best Western Plus, were robbed in Ruidoso, New Mexico. Defendant was charged in a single criminal information for both robberies. Before trial, Defendant moved to sever the charges pertaining to the robberies at the two different hotels and to suppress eyewitness identification testimony. The district court denied both motions. After trial, the jury convicted Defendant for (1) armed robbery of Pine Springs, (2) aggravated assault with intent to commit armed robbery of Pine Springs, and (3) larceny of Best Western Plus.

**{3}** At the end of trial and again at sentencing, Defendant moved to dismiss one of the Pine Springs convictions and argued convictions for both armed robbery and aggravated assault violated double jeopardy. The district court denied the motions. The district court additionally declined to grant Defendant's requested presentence confinement credit. Defendant was sentenced to nine years and six months' incarceration, with 413 days of presentence confinement credit. This appeal followed.

## DISCUSSION

**{4}** Defendant appeals the denial of his (1) motion to sever; (2) motion to suppress; and (3) motion to dismiss for violations of double jeopardy. Defendant also argues that the district court incorrectly calculated the presentence confinement credit. We address each issue in turn.

## I. The Motion to Sever

**{5}** As required by Rule 5-203(A) NMRA, the State properly joined the charges related to Pine Springs and Best Western Plus in a single criminal information. *See State v. Gallegos*, 2007-NMSC-007, ¶ 10, 141 N.M. 185, 152 P.3d 828 (recognizing that Rule 5-203(A) joinder is "not a discretionary or permissive rule" but instead "demands that the [s]tate join certain charges"). Despite proper joinder, a district court may sever joined charges if "a defendant or the state is prejudiced by a joinder of offenses[.]" Rule 5-203(C). A district court abuses its discretion by denying a motion to sever if "there is an appreciable risk that reversal will be warranted because of a later determination of *actual* prejudice." *Gallegos*, 2017-NMSC-007, ¶ 19. Actual prejudice may result "if the joinder of offenses permits the jury to hear testimony that would have been otherwise inadmissible in separate trials." *Id.* (alteration, internal quotation marks, and citation omitted).

**{6}** Defendant contends that he was prejudiced by the joinder of the charges because joinder "allowed the jury to consider evidence of the two separate hotel incidents that would not have been cross-admissible under Rule 11-404(B) [NMRA] if the charges pertaining to each hotel would have been tried separately." Specifically, Defendant argues that the evidence of the two robberies was not cross-admissible under Rule 11-404(B) as "modus operandi" or "identity" evidence and that "the combined evidence had a significant prejudicial effect." The district court concluded that evidence of the two incidents was cross-admissible based on the similarity of the two

robberies and the closeness in time and location of the two incidents. The State adopts the district court's reasoning on appeal. We first determine whether the evidence from the two robberies was cross-admissible and then whether there was any evidence of undue prejudice.

**{7}**     The evidence of both robberies was admissible for a permissible purpose, to establish identity. *See* Rule 11-404(B) (including "identity" as a permissible purpose); *Gallegos*, 2007-NMSC-007, ¶ 22 (noting "other-acts" evidence may be admissible if relevant to an issue apart from "criminal propensity"). "[T]he use of modus-operandi evidence to prove identity has frequently been recognized," and "[t]he identity exception to Rule 11-404(B) may be invoked when identity is at issue and when the similarity of the other crime demonstrates a unique or distinct pattern easily attributable to one person." *State v. Peters*, 1997-NMCA-084, ¶¶ 13-14, 123 N.M. 667, 944 P.2d 896 (alteration, internal quotation marks, and citation omitted). Whether the evidence is relevant to show identity "depends on the degree of similarity." *Id.* ¶ 14. In *Peters*, the attacks occurred within a mile of each other, the assailant entered through a back window of a home at night and wielded a knife, the victims were elderly women who lived alone, and each victim was raped and provided a similar description of their attacker. *Id.* ¶ 15. The attacker tied and gagged the victims in the same way, put a cloth over their heads, and took their purses. *Id.* This Court determined that the two attacks "shared a marked number of similarities which could logically lead a jury to the inference that these two women were attacked by the same man." *Id.* The evidence became even more relevant after coupling the factual assertions with DNA evidence that corroborated a witness's identification of the defendant. *Id.* ¶ 20.

**{8}**     The two robberies in the present case, like the *Peters* crimes, logically lead to an inference that the two hotels were robbed by the same man, and that inference becomes even more relevant in combination with the Best Western Plus video footage. The robberies happened on the same night, within fifteen to twenty minutes of each other, at two Best Western locations that were two or three miles apart. For both robberies, a man entered the front desk area through the laundry room, knew how to open each of the cash drawers, and attempted to conceal his face with glasses. The man overtly threatened the first clerk with a weapon and during the second robbery, handled his jacket while telling witness Julienne Ivey that if she went back to the laundry room everything would be all right. Defendant argues that the robberies were too different, because "the suspect at the Best Western Plus posed as a manager and did not use a weapon," but the Pine Springs suspect "slammed a hatchet on the counter during the robbery." Based on the evidence we have described, we hold the district court reasonably concluded the evidence was cross-admissible. We therefore must consider whether the evidence was unduly prejudicial under Rule 11-403 NMRA. *See State v. Martinez*, 2021-NMSC-002, ¶ 101, 478 P.3d 880 (reviewing cross-admissible evidence to ensure no undue prejudice); Rule 11-403 (permitting exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

**{9}** Defendant contends that the "combined evidence had a significant prejudicial effect[,]" because only the Best Western Plus robbery was captured on video. Defendant speculates that seeing the Best Western Plus video footage "may have caused the jury to forego a meaningful evaluation of identity" for the Pine Springs robbery, which had no video. Prejudicial evidence is excluded only if the prejudice is *undue*. *See State v. Maxwell*, 2016-NMCA-082, ¶ 24, 384 P.3d 116 ("The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." (emphasis omitted)). The evidence of the circumstances and timing of both robberies raises an inference that they were committed by the same person. *See Peters*, 1997-NMCA-084, ¶ 15. The video evidence from Best Western Plus, in addition to the photographs that the witnesses identified, makes that inference more relevant—and not substantially more prejudicial—because the video evidence provides a visual depiction of the individual involved. *Id.* ¶ 20. The district court properly determined that no undue prejudice resulted from admitting the evidence of both robberies in a single trial.

**{10}** We therefore affirm the district court's denial of the motion to sever.

## II.    The Motion to Suppress

**{11}** Defendant argues that his motion to suppress the eyewitness identification testimony "must be reversed" based on *Martinez*, in which our Supreme Court recently rejected the long-standing federal test and established a new state constitutional due process standard governing the admissibility of witness identifications. 2021-NMSC-002, ¶¶ 2-3. We note at the outset that Defendant abandoned any appeal of the district court's application of the federal standard. Thus, if we do not apply the *Martinez* standard, we must affirm the district court's admission of the eyewitness testimony under the federal standard.

**{12}** Under the *Martinez* standard, the defendant bears the "initial burden" to establish "some indication of suggestiveness in law enforcement's administration of the eyewitness identification procedure." *Id.* ¶ 88. If the defendant makes this showing, the state must prove by clear and convincing evidence that "*either* (1) the procedure employed was not so suggestive as to materially taint the identification made by the eyewitness, which is to say that any departure from proper procedure could not have increased the risk of misidentification, *or* (2) good reason existed for the police to employ the suggestive procedure in the first instance." *Id.* If the state does not carry its burden, "the identification and any subsequent identification by the same witness must be suppressed." *Id.*

**{13}** *Martinez* was decided well after Defendant's suppression motion and trial. Changes in the law generally apply "to cases pending on direct appeal, as long as the issue was raised and preserved below or the failure to apply the new rule constitutes fundamental error." *Kersey v. Hatch*, 2010-NMSC-020, ¶ 19, 148 N.M. 381, 237 P.3d 683. Defendant suggests he preserved the issue but points to general references to Article II, Section 18 of the New Mexico Constitution in the district court pleadings.

Because, however, the New Mexico Supreme Court, had not previously determined that "Article II, Section 18 generally provides greater due process protection than its federal counterpart[,]" *see Martinez*, 2021-NMSC-002, ¶¶ 34-36, to preserve the state constitutional argument, Defendant was required to do more. Defendant had to—and did not—specifically assert to the district court that the state Constitution should be more broadly interpreted and offer reasons for the requested different interpretation. *See State v. Leyva*, 2011-NMSC-009, ¶ 40, 149 N.M. 435, 25 P.3d 861. Defendant therefore failed to preserve an argument that the state Constitution provides broader protections than its federal counterpart. The question for this Court, then, is whether it would be fundamental error not to apply the *Martinez* standard. We therefore first determine whether it was error to deny the suppression motion under the *Martinez* standard and then whether it would be fundamental error not to apply the *Martinez* standard to the district court's ruling. *See State v. Samora*, 2013-NMSC-038, ¶¶ 13, 16, 307 P.3d 328 (concluding first that the defendant's constitutional rights were violated and second reviewing for reversible, fundamental error).

**{14}** Defendant refers to the *Martinez* Court's review of scientific research on photo identifications and contends that the eyewitness identification procedures used were suggestive, because (1) eyewitness Cyriana Enjady received "post-event information" from a police officer who showed her a single photo on the night of the incident; (2) all three eyewitnesses identified Defendant multiple times and saw him in a court setting, which led to "source monitoring errors" and undermined the certainty of their identifications; and (3) law enforcement did not comply with two requirements of the Accurate Eyewitness Identification Act (the Act), NMSA 1978, §§ 29-3B-1 to -4 (2019). With Defendant's final two arguments, we disagree.

**{15}** Defendant has shown no indication of suggestiveness related to the six-pack identifications by witnesses, Mary Mansfield and Julienne Ivey, arising from "source monitoring errors."[1] Only argument of counsel, and not evidence, supports Defendant's position that the multiple identifications by Mansfield and Ivey indicate that the procedures were suggestive in the present case. *See State v. Cordova*, 2014-NMCA-081, ¶ 10, 331 P.3d 980 ("[A]rgument of counsel is not evidence."). We are further not persuaded that the six-pack photo arrays were suggestive based on failures to comply with the Act. Defendant argues the preidentification written instructions did not include

---

[1] In the reply brief, Defendant argues that these two identifications were tainted because (1) the witnesses attended a staff meeting the day after the two robberies, during which some employees viewed the video from the second robbery; and (2) that the New Mexico Constitution does not require that the suggestive procedure be implemented by a state actor. We reject Defendant's argument. First, we decline to extend *Martinez* as Defendant requests, because no state constitutional argument was preserved and the argument was made for the first time in the reply brief. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 (refusing to review "even constitutional issues" if they were not preserved and were not raised for the first time on appeal in reply). Second, no witness testified they viewed the entire video at the meeting. At the suppression hearing, Ivey and Enjady testified that others were watching it and another employee suggested the person looked like Defendant. Ivey did not know Defendant. Enjady had already decided it looked like someone with whom she had worked. Third, the *Martinez* Court addressed police, not third-party, identification procedures. 2021-NMSC-002, ¶ 3 (identifying "troubling problems" caused by "police-arranged identification procedures" as the reason for considering "our state constitutional jurisprudence" surrounding witness identification evidence).

particular language required by the Act, including that (1) the perpetrator's photo might not be included and (2) the investigation would continue regardless whether an identification was made. The preidentification instructions, however, directed the witness to tell the officer if she did not believe the suspect was included in the photos. Though the instructions did not inform the witness that the investigation would proceed regardless whether an identification was made, this singular omission does not indicate that the entire procedure was suggestive. The Mansfield and Ivey identifications, therefore, would be admissible under the new *Martinez* rule.

**{16}** We agree, however, that the single photo shown to Enjady an hour after the robbery was a suggestive police procedure and not admissible under the new *Martinez* rule. *See State v. Nolan*, 1979-NMCA-116, ¶ 17, 93 N.M. 472, 601 P.2d 442 (holding that an identification procedure using only one photograph was impermissibly suggestive). The State argues that *Martinez* does not apply, because Enjady knew Defendant, her identification was based on personal knowledge, and viewing a single photo of Defendant the same night as the robbery could not taint her identification. The State cites *Martinez*, which explained that identifications would be admissible "where the eyewitness, such as a domestic violence victim, is personally familiar with the perpetrator of the crime" and observed that identity is unlikely to be at issue in such cases. 2021-NMSC-002, ¶ 78. The State has not established that this "exception" applies here, because Enjady's suppression hearing testimony indicated that she did not recognize Defendant as a former coworker at the time of the robbery. An hour later, however, she recognized a coworker's face—"a little"—in the single photo shown to her by the police officer. The State has offered no other argument to establish that the identification was admissible under *Martinez*. Accordingly, we conclude that the use of the single photo was suggestive, and the State did not carry its burden to demonstrate by clear and convincing evidence that the departure from proper procedure did not materially increase the risk of misidentification.

**{17}** Having identified error under *Martinez*, we next consider whether the failure to apply the *Martinez* test resulted in fundamental error. Fundamental error is an "exacting standard" and requires that "the question of guilt be so doubtful that it would shock the conscience of the court to permit the verdict to stand." *Samora*, 2013-NMSC-038, ¶ 17 (alterations, internal quotation marks, and citation omitted). Under the circumstances of the present case, it does not shock the conscience of the Court to permit the verdict to stand. No evidence suggests Enjady's identification tainted Mansfield's or Ivey's identification of Defendant. The video evidence of the Best Western Plus robbery was played for the jury, and the State presented copious evidence of the similarities between the two robberies: two locations of the same hotel chain, the entrance and exit through the laundry room, or the robber's knowledge of the cash drawer system. These other facts support the jury's verdict and alleviate any question that Defendant's guilt is doubtful.

**{18}** In summary, Enjady's testimony should have been suppressed under the *Martinez* standard. This unpreserved error, however, was not fundamental. *See State v. Cunningham*, 2000-NMSC-009, ¶ 18, 128 N.M. 711, 998 P.2d 176 (describing

fundamental error as an exception to the preservation requirement). The admission of the testimony did not render the question of guilt so doubtful that permitting the verdict to stand would shock our conscience. We therefore decline to reverse based on the new *Martinez* standard. *See Kersey*, 2010-NMSC-020, ¶ 19 (applying changes in the law to cases pending on direct appeal only if "the failure to apply the new rule constitutes fundamental error").

### III.    Double Jeopardy

**{19}** Defendant contends that his convictions for armed robbery and assault with intent to commit armed robbery (assault), relating to the Pine Springs robbery, violate the protection against double jeopardy. Defendant maintains that he was subject to multiple punishments for "obtaining money from Ms. Enjady" and asserts that he was punished under multiple statutes for the same conduct. We first evaluate de novo, as a mixed question of law and fact, whether the conduct was unitary—"whether the same conduct violates both statutes." *State v. Armijo*, 2005-NMCA-010, ¶ 15, 136 N.M. 723, 104 P.3d 1114 (internal quotation marks and citation omitted). Second, we ask a legal question, "whether the [L]egislature intended to impose multiple punishments for the unitary conduct." *Id.* (internal quotation marks and citation omitted).

**{20}** To determine whether the conduct was unitary, "we consider whether the illegal acts are separated by sufficient indicia of distinctness[,]" including "the separation of time or physical distance between the illegal acts, the quality and nature of the individual acts, and the objectives and results of each act." *Id.* ¶ 16 (internal quotation marks and citation omitted). Defendant argues that the "use of force [was] the same, and the conduct [was] unitary." The State responds that because the victims were different (Pine Springs for the armed robbery and Enjady for the assault), the conduct was not unitary. The jury, however, was instructed on armed robbery in the alternative— that either Pine Springs "and/or" Enjady was the victim. Consequently, we must presume "that the convictions were based on an alternative in the jury instructions that would result in double jeopardy." *See State v. Sena*, 2020-NMSC-011, ¶ 49, 470 P.3d 227. We therefore presume that the jury decided Enjady was the victim for the armed robbery charge.

**{21}** In that context, we consider whether the conduct for each crime was unitary and whether the evidence rebuts the presumption. *See id.* ¶¶ 50-51, 54. Enjady testified that Defendant came up next to her, said some words, and slammed the hatchet down. At that point, Mansfield told Enjady to get away from the counter, and Enjady moved away. Defendant, still in possession of the hatchet, took money from the drawer and left. These events were very close in time and the evidence shows no threat to Enjady apart from the slamming of the hatchet. Based on this evidence and the presumption that Enjady was the victim for both crimes, we conclude the conduct was unitary.

**{22}** Having reached this conclusion, we proceed to determine whether the Legislature intended to allow multiple punishments based on the circumstances of the case. *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. Because many forms

of conduct can support the two offenses, *Swick* instructs that we apply a modified version of the analysis set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), in order to determine whether the elements of the crimes, informed by the State's legal theory, each required proof of a fact that the other did not. *Swick*, 2012-NMSC-018, ¶¶ 15, 17, 21.

**{23}** The armed robbery statute requires an element that the assault statute does not—theft of something with value. *See* § 30-16-2. The assault charge, however, does not include an element that is not also required by armed robbery. *Compare* § 30-16-2, *with* § 30-3-3. The jury instruction for assault defined the conduct to be that which caused Enjady to believe Defendant "was about to intrude on [her] bodily integrity or personal safety by touching or applying force to [her] in a rude, insolent or angry manner." Essentially, the assault charge required a threat of force. *See* NMSA 1978, § 30-3-1(B) (1963) (defining assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery"); NMSA 1978, § 30-3-4 (1963) (defining battery as an "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner"). The jury was also instructed that to prove the crime of armed robbery, the State had to prove Defendant "took the US Currency by threatened force or violence." In closing, the State reinforced that position and argued that the threat of force supporting both charges was the "slamming" of the hatchet. *See Luna*, 2018-NMCA-025, ¶¶ 10, 15-16. We therefore conclude that while armed robbery requires an additional element (theft), assault does not include an element that is not also included in armed robbery. *Id.* ¶ 17 ("[I]n order for a statute not to be subsumed within another, *each* statute must require proof of a fact which the other does not."). Defendant's assault conviction is therefore subsumed in the armed robbery conviction and must be vacated. *Id.*

## IV.    Presentence Confinement Credit

**{24}** Defendant argues that the district court incorrectly denied a portion of presentence confinement credit. Defendant was arrested on July 5, 2016 and incarcerated beginning September 6, 2017. Defendant was charged and tried in another case and given presentence confinement credit in that case from January 9, 2017, until October 17, 2017. Defendant completed his sentence for the other case on December 11, 2018. On December 18, 2019, however, a portion of the other case was reversed by this Court. *See State v. May*, A-1-CA-36847, mem. op. ¶ 1 (N.M. Ct. App. Dec. 18, 2019) (nonprecedential). The reversed charge, driving on a suspended license, carried a 364-day term of incarceration. The district court declined to grant Defendant presentence confinement credit beginning December 12, 2017 (accounting for the 364 days before this Court's reversal of the 364-day suspended license sentence in the other case) but credited him for time served beginning on December 11, 2018, the date that Defendant completed the other sentence. Defendant maintains that he was entitled to the additional 364 days credit—time he never should have served for the suspended license conviction that was reversed. The State does not contest the recalculation of Defendant's presentence confinement credit to award additional credit. We accept the

State's concession that recalculation is warranted. But given the limited record before us regarding the sentence in the other case and the impact of this Court's reversal on that sentence, we remand to the district court for recalculation and resentencing.

**CONCLUSION**

**{25}** We affirm the denial of the motion to sever and the motion to suppress. We hold that Defendant's conviction for assault with intent to commit armed robbery violates double jeopardy. We remand for the district court to vacate the conviction for assault with intent to commit armed robbery and for recalculation of Defendant's presentence confinement credit.

**{26} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**